**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: CREATIVE GOLDSMITHS OF
WASHINGTON, D.C., INCORPORATED,
<u>Debtor.</u>

ROGER SCHLOSSBERG, Trustee,
<u>Plaintiff-Appellant,</u>

v.

No. 96-1895

STATE OF MARYLAND, Comptroller of
the Treasury,
<u>Defendant-Appellee,</u>

UNITED STATES TRUSTEE,
<u>Party-in-interest,</u>

v.

UNITED STATES OF AMERICA,
<u>Intervenor.</u>

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Peter J. Messitte, District Judge.
(CA-95-2693-PJM, BK-91-11468-SD)

Argued: April 11, 1997

Decided: July 22, 1997

Before HALL, WILKINS, and NIEMEYER, Circuit Judges.

_____

Vacated and remanded with instructions to dismiss by published opin-
ion. Judge Niemeyer wrote the opinion, in which Judge Hall and
Judge Wilkins joined.

**COUNSEL**

**ARGUED:** Roger Schlossberg, SCHLOSSBERG & ASSOCIATES, Hagerstown, Maryland, for Appellant. Andrew Howard Baida, Assistant Attorney General, Annapolis, Maryland, for Appellee. **ON BRIEF:** J. Joseph Curran, Jr., Attorney General of Maryland, Gerald Langbaum, Assistant Attorney General, Annapolis, Maryland; Wallace E. Brooks, Sylvia J. Brokos, COMPTROLLER OF THE TREASURY, Baltimore, Maryland, for Appellee. Frank W. Hunger, Assistant Attorney General, Lynne A. Battaglia, United States Attorney for the District of Maryland, Mark B. Stern, Michael E. Robinson, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Intervenor.

_____

**OPINION**

NIEMEYER, Circuit Judge:

Roger Schlossberg, a trustee in bankruptcy, sued the State of Maryland Comptroller of the Treasury in federal court to avoid as a preference the bankruptcy debtor's $4,382 payment of income taxes made to the state within 90 days of the filing of the bankruptcy petition. See 11 U.S.C. § 547(b). In the courts below, the state contended successfully that the debtor's income tax payment was not a preference because it was made in the "ordinary course of business." See 11 U.S.C. § 547(c)(2)(B). On the trustee's appeal to this court, the state contends for the first time that it is immune from the trustee's suit under the Eleventh Amendment, and the trustee responds that, under the Bankruptcy Code, the state is "deemed to have waived [its Eleventh Amendment] sovereign immunity" because it filed a proof of claim for sales taxes and withholding taxes. See 11 U.S.C. § 106(b). Because the state challenges 11 U.S.C. § 106 under the Eleventh Amendment, the United States intervened. See 28 U.S.C. § 2403.

Because we conclude that Congress did not have the power to abrogate the state's sovereign immunity from federal jurisdiction and that the state did not waive its immunity with regard to the present suit, we vacate the district court's judgment for lack of jurisdiction

2

and remand the case with instructions to dismiss the trustee's adversary action against the state.

I

On March 12, 1992, creditors of Creative Goldsmiths of Washington, D.C., Inc., a Maryland corporation, filed a petition for involuntary bankruptcy against Creative Goldsmiths under Chapter 7 of the Bankruptcy Code. The bankruptcy court appointed Roger Schlossberg as trustee for the bankruptcy estate. During the course of bankruptcy administration, the trustee filed an adversary proceeding in the bankruptcy court against the State of Maryland Comptroller of the Currency to avoid as a preference the payment of $4,382 in income taxes made by Creative Goldsmiths to the state within 90 days of the filing of the bankruptcy petition. The trustee alleged that when the taxes were paid, Creative Goldsmiths was insolvent, and as a result of the payment Maryland received more than it would have as a claimant for the taxes in the Chapter 7 proceeding. In response to the trustee's complaint, Maryland contended that the $4,382 payment was made "in the ordinary course of business between the debtor and the Comptroller, and as such, is not subject to avoidance." The parties stipulated to the following operative facts.

Pursuant to Creative Goldsmiths' application for an extension of time in which to file its 1990 corporate income tax return, the state granted a six-month extension as provided by Maryland law. See Md. Code Ann. Tax-Gen'l Art. § 10-823; Md. Regs. Code tit. 03 § 04.03.04(C). Creative Goldsmiths had filed for and obtained similar extensions in each of the two preceding tax years. With the extension for filing its 1990 income tax return, Creative Goldsmiths was required to pay taxes still owed, as well as any penalties and interest due, by December 14, 1991.

Within the extension period, Creative Goldsmiths paid Maryland $4,382 in taxes but paid no penalties or interest. At the time Creative Goldsmiths paid its taxes, it was insolvent and it made payment within 90 days of the subsequently filed involuntary petition in bankruptcy.

Although Creative Goldsmiths owed Maryland $1,653.48 in interest and penalties with respect to its 1990 corporate income taxes, the

3

state did not seek relief from the automatic stay imposed by statute, see 11 U.S.C. § 362, or otherwise attempt to improve its position for payment of that sum. Moreover, it did not file a proof of claim for it. But Maryland did file a proof of claim for $1,400.85 in sales taxes and withholding taxes that Creative Goldsmiths collected or should have collected from third persons.

On cross-motions for summary judgment, the bankruptcy court ruled in favor of Maryland, concluding that "the Transfer, in the amount of $4,382 to the Comptroller of the Treasury, was made in the ordinary course of business and is not avoidable under 11 U.S.C. § 547." The district court affirmed and entered judgment in favor of Maryland. This appeal followed.

II

The trustee, observing that the state raises Eleventh Amendment immunity for the first time on this appeal, contends that in any event the Bankruptcy Code, 11 U.S.C. § 106(a) abrogates that immunity and authorizes his action against the state. He also argues that Maryland waived any sovereign immunity by filing a proof of claim in the bankruptcy court for sales taxes and withholding taxes. See 11 U.S.C. § 106(b). Accordingly, we address first the question of whether Maryland can assert Eleventh Amendment immunity for the first time on appeal.

The Eleventh Amendment provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." It is well-established that this bar to suits against states in federal courts applies not only to actions brought by citizens of another state, but also to those brought by citizens of the state involved. See Hans v. Louisiana, 134 U.S. 1, 10 (1890). The Eleventh Amendment confirms that each state is a sovereign entity and that "it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent." Seminole Tribe of Florida v. Florida, 116 S. Ct. 1114, 1122 (1996) (internal quotations and citations omitted). Accordingly, the Supreme Court has long held that"[t]his express constitutional limitation denies to the federal courts authority to enter-

4

tain a suit brought by private parties against a state without its consent." Ford Motor Co. v. Department of Treasury of Indiana, 323 U.S. 459, 464 (1945).

Although Maryland did not assert its Eleventh Amendment immunity in the courts below, "it has been well settled since the decision in Ford Motor Co. v. Department of Treasury . . . that the Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar so that it need not be raised in the trial court." Edelman v. Jordan, 415 U.S. 651, 677-78 (1974) (emphasis added). The Court in Ford Motor explained:

> The Eleventh Amendment declares a policy and sets forth an explicit limitation on federal judicial power of such compelling force that this Court will consider the issue arising under this Amendment in this case even though urged for the first time in this Court.

323 U.S. at 467.

Accordingly, even though Maryland asserts Eleventh Amendment immunity for the first time on appeal, we will consider the defense.

III

The trustee contends that after the Supreme Court's decision in Hoffman v. Connecticut Dep't of Income Maintenance, 492 U.S. 96, 101 (1989), which stated that "to abrogate the States' Eleventh Amendment immunity from suit in federal court . . . Congress must make its intention `unmistakably clear in the language of the statute,'" Congress enacted the Bankruptcy Improvement Act of 1994, 11 U.S.C. § 106, expressly abrogating the state's sovereign immunity. See also United States v. Nordic Village, Inc., 503 U.S. 30 (1992) (stating that former 11 U.S.C. § 106(c) is not sufficiently unequivocal to waive immunity). The language of new § 106(a), entitled "Waiver of sovereign immunity," would seem to confirm the trustee's argument that Congress has now clearly abrogated state sovereign immunity from suit in federal court. That section reads in pertinent part:

5

Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit [including a state] to the extent set forth in this section with respect to the following:

(1) Sections . . . 106 [and] . . . 547 . . . of this title.

(2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.

(3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages. . . .

(4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States.

(Emphasis added). Accordingly, the trustee contends that Congress abrogated Eleventh Amendment immunity both for his 11 U.S.C. § 547 action against Maryland and with respect to other provisions of 11 U.S.C. § 106 that define the circumstances in which a state waives immunity.

While the trustee's arguments based on the clarity of Congress' intent are supportable as far as he takes them, he fails to recognize that following the enactment of the Bankruptcy Reform Act of 1994, the Supreme Court emphasized that any Eleventh Amendment analysis must also include an inquiry into whether Congress has the power to abrogate a state's sovereign immunity. See Seminole, 116 S. Ct. at

6

1124-25. That case reminds us that the Constitution establishes a federal government of enumerated powers whose boundaries must be observed.

Were we to read only the Bankruptcy Clause of the Constitution, art. I, § 8, cl. 4 (conferring on Congress the power "[t]o establish . . . uniform Laws on the subject of Bankruptcies throughout the United States"), and Article III (authorizing Congress to vest the judicial power of the United States in lower federal courts), we might readily conclude that the states in subscribing to the Constitution conferred on the federal government the power to enact bankruptcy laws for enforcement in federal courts which, for that purpose, would have jurisdiction over the states. But as the Court in Seminole instructed, a proper understanding of the structural balance between state sovereignty and congressional power must take into account the effects of the Eleventh and Fourteenth Amendments.

As Seminole explains, the Eleventh Amendment was passed to counteract an expansion of federal jurisdiction to suits by private persons against unconsenting states, which had never been contemplated by the founders in establishing the judicial power under Article III. See Seminole, 116 S. Ct. at 1124, 1130-32. The Eleventh Amendment thus expressly limited federal judicial power over the states. Accordingly, to give the Eleventh Amendment effect, Congress' powers under Article I cannot be construed to empower it to expand federal jurisdiction by abrogating the states' sovereign immunities.

To apply these principles to a federal statute passed pursuant to the Indian Commerce Clause, U.S. Const. art. I, § 8, cl. 3, which clearly purported to abrogate the states' sovereign immunities, the Court in Seminole posed the fundamental question,"Was the Act in question passed pursuant to a constitutional provision granting Congress the power to abrogate?" Seminole, 116 S. Ct. at 1125. The Court answered that question in the negative, explaining:

> Even when the Constitution vests in Congress complete lawmaking authority over a particular area, the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting States. The Eleventh Amendment restricts the judicial power under Article III,

7

> and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction.

Seminole, 116 S. Ct. at 1131-32. The Court thereby overruled its only prior case finding congressional authority to abrogate state sovereign immunity pursuant to an Article I power -- a plurality opinion in Pennsylvania v. Union Gas Co., 491 U.S. 1 (1989), that had found such power in the Commerce Clause, U.S. Const. art. I, § 8, cl. 3.

Because the holding in Seminole extended to restrict all federal jurisdiction over the states based on Article I powers, we hold in this case that Congress has no authority under the Bankruptcy Clause, U.S. Const. art. I, § 8, cl. 4, to abrogate state sovereign immunity in federal courts. We find unpersuasive the argument of the United States that the Bankruptcy Clause's provision for the enactment of "uniform laws on the subject of Bankruptcies," id. (emphasis added), requires Congressional powers under this clause to be distinguished from other Article I powers for purpose of reconciliation with the restraints imposed by the Eleventh Amendment. As Justice Marshall observed in his dissenting opinion in Hoffman ,

> I see no reason to treat Congress' power under the Bankruptcy Clause any differently [than the Commerce Clause power, as addressed in Union Gas], for both constitutional provisions give Congress plenary power over national economic activity. See The Federalist No. 42, p. 271 (C. Rossiter ed. 1961) (J. Madison) (describing the Bankruptcy Clause and the Commerce Clause as "intimately connected").

Hoffman, 492 U.S. at 111 (Marshall, J., dissenting).

Despite its recognition of the limitations placed on Article I powers by the Eleventh Amendment, the Seminole Court did acknowledge a legitimate source of congressional power to abrogate states' immunities. Section 5 of the Fourteenth Amendment, which was ratified 70 years after the Eleventh Amendment, appears to take back some of the earlier amendment's limitations because, "by expanding federal power at the expense of state autonomy, [it] fundamentally altered the balance of state and federal power struck by the Constitution" and

8

"expressly provided that `The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article.'" Seminole, 116 U.S. at 1125 (quoting U.S. Const. amend. XIV, § 5). "As a result, when acting pursuant to § 5 of the Fourteenth Amendment, Congress can abrogate the Eleventh Amendment without the States' consent." Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238 (1985); see also Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976). The United States thus urges us to sustain § 106 under the authority granted Congress by § 5 of the Fourteenth Amendment. But as the Supreme Court's recent pronouncement in City of Boerne v. Flores indicates, § 5 of the Fourteenth Amendment does not grant Congress a plenary power. 1997 WL 345322, *12 (U.S., June 25, 1997) ("Any suggestion that Congress has a substantive non-remedial power under the Fourteenth Amendment is not supported by our case law.").

In this case, there is no evidence to indicate that in enacting the Bankruptcy Reform Act of 1994, Congress acted under§ 5 of the Fourteenth Amendment. See Seminole, 116 S. Ct. at 1125 (stating that operative question is under what constitutional provision an act of Congress was passed and noting that litigants had not challenged lower court's finding that Indian gaming regulation was not passed pursuant to Fourteenth Amendment). Indeed, the conclusion seems logically inescapable that in passing the 1994 Act Congress exercised the same specifically enumerated Article I bankruptcy power that it has traditionally relied on in enacting prior incarnations of the bankruptcy law dating back to 1800 -- 68 years before the passage of the Fourteenth Amendment. See Law of Apr. 4, 1800, ch. 19, 2. Stat. 19 (repealed 1803). We will not presume that Congress intended to enact a law under a general Fourteenth Amendment power to remedy an unspecified violation of rights when a specific, substantive Article I power clearly enabled the law.

Furthermore, reliance on § 5 of the Fourteenth Amendment as a post hoc justification for Congress's attempted abrogation in 11 U.S.C. § 106 would require us to ignore the result in Seminole. It is self-evident that the Fourteenth Amendment protects individuals from state deprivations of property without due process of law and thus, at some level of generality, could arguably apply to authorize bankruptcy court adjudications of property rights. But see City of Boerne, 1997 WL 345322, *10 ("The Enforcement Clause[of the Fourteenth

9

Amendment] . . . did not authorize Congress to pass `general legislation upon the rights of the citizen, but corrective legislation . . . .' The power to `legislate generally upon' life, liberty, and property, as opposed to the `power to provide modes of redress' against offensive state action, was `repugnant' to the Constitution.") (citations omitted). If the Fourteenth Amendment is held to apply so broadly as to justify Congress' enactment of the Bankruptcy Code as a requirement of due process, then the same argument would justify every federal enforcement scheme as a requirement of due process under the Fourteenth Amendment. Clearly, the Indian gaming regulation at issue in Seminole would itself have been subject to this style of constitutionalization, for the statute provided for arbitration enforceable in federal court and governed property rights in the form of future gaming proceeds. Thus, Seminole itself is inconsistent with any reading that would extend Congressional power under § 5 of the Fourteenth Amendment to reincorporate express Article I powers.

In summary, we conclude in light of Seminole that Congress is not empowered to use Article I authority, specifically the Bankruptcy Clause, to circumvent the Eleventh Amendment's restriction on federal jurisdiction. Because there is no evidence that Congress either passed the Bankruptcy Code under § 5 of the Fourteenth Amendment or sought to preserve the core values specifically enumerated in that amendment, we hold that Congress' effort to abrogate the states' Eleventh Amendment immunity through its 1994 enactment of 11 U.S.C. § 106(a) is unconstitutional and ineffective. See Seminole, 116 S. Ct. at 1131-32.

Because 11 U.S.C. § 106(a) purports to abrogate state immunity also for § 106(b), our analysis likewise applies to § 106(b). But even the language of 11 U.S.C. § 106(b) itself-- that a state is "deemed to have waived sovereign immunity" -- amounts to language of abrogation. In that section, Congress unequivocally purports to say when states have no immunity from private suits in federal court. Cf. United States v. Nordic Village, Inc., 503 U.S. 30, 34 (1992) (11 U.S.C. § 106(b), then numbered § 106(a), is an unequivocal expression that governmental units, including states, waive sovereign immunity). While 11 U.S.C. § 106(b) may correctly describe those actions that, as a matter of constitutional law, constitute a state's waiver of the Eleventh Amendment, it is nevertheless not within Congress' power

10

to abrogate such immunity by "deeming" a waiver. Rather, in the absence of a constitutional authorization, it lies solely within a state's sovereign power to waive its immunity voluntarily and to consent to federal jurisdiction. Only if it waives such immunity may a private citizen sue the state in federal court.

IV

In considering whether a state has waived its Eleventh Amendment immunity, the Supreme Court has consistently held that "a State will be deemed to have waived its immunity only where[the waiver is] stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction." Atascadero, 473 U.S. at 239-40 (internal quotations omitted). The court explained:

> A State may effectuate a waiver of its constitutional immunity by a state statute or constitutional provision, or by otherwise waiving its immunity to suit in the context of a particular federal program. In each of these situations, we require an unequivocal indication that the State intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment. As we said in Edelman v. Jordan, 415 U.S. 651, 673 (1974), "constructive consent is not a doctrine commonly associated with the surrender of constitutional rights, and we see no place for it here."

Id. at 238 n.1.

Determining whether a state has waived its Eleventh Amendment immunity and consented to federal jurisdiction requires us first to look at the state's law. In Ford Motor, the State of Indiana defended on the merits against a diversity suit for a state tax refund brought in federal court under the state's own law, and it did not raise the Eleventh Amendment objection until its appeal reached the Supreme Court. In examining whether Indiana had waived its Eleventh Amendment immunity, the Supreme Court concluded that the state law authorizing refunds should be construed narrowly and that, therefore, its law waived sovereign immunity only for refund suits brought in state court. See Ford Motor, 323 U.S. at 465-66; accord Atascadero,

11

473 U.S. at 241; Barfield v. Blackwood (In re Sec. of Dep't of Crime Control and Public Safety), 7 F.3d 1140, 1146-47 (4th Cir. 1993) (Eleventh Amendment immunity not waived by statute requiring state to pay judgments awarded by courts of competent jurisdiction against state employees, even if the statute waived immunity in state courts); Westinghouse Elec. Corp. v. West Virginia Dep't of Highways, 845 F.2d 468, 471 (4th Cir. 1988) (statutes precluding assertion of "constitutional immunity" or "governmental status" at most waived immunity in state courts). The absence of a specific state statute waiving the state's immunity did not, however, conclude the Supreme Court's analysis in Ford Motor. The Court stated:

> It remains to be considered whether the attorney general for the State of Indiana in his conduct of the present proceeding has waived the state's immunity from suit. The state attorney general is authorized to represent the state in actions brought under the Indiana refund statute. He appeared in the federal District Court and the Circuit Court of Appeals and defended the suit on the merits.

\* \* \*

> It is conceded by the respondents that if it is within the power of the administrative and executive offices of Indiana to waive the state's immunity, they have done so in this proceeding. The issue thus becomes one of their power under state law to do so. As this issue has not been determined by state courts, this Court must resort to the general policy of the state as expressed in its Constitution, statutes and decisions.

Ford Motor, 323 U.S. at 466-67 (footnotes omitted) (emphasis added). After examining the relevant state constitutional provisions and case law, which required any waiver of sovereign immunity to apply to an entire category of cases and which did not grant the Indiana Attorney General the power to make case-by-case waiver decisions, the Ford Motor Court concluded that no properly authorized state official had waived the state's Eleventh Amendment immunity and thus that the federal courts lacked jurisdiction. See id. at 468-69. In sum, the Supreme Court indicated that a state's consent to be sued

12

in federal court must be clearly intended by its state law and implemented by an officer acting properly under that law.

As we look to state law to determine whether the state has waived sovereign immunity and whether its officers have properly acted under that law, we also look to state law when a state has voluntarily initiated an action in federal court to determine whether the state officer is authorized to proceed in federal court. Only if we determine that he has such an authority do we look to federal law to determine the scope of waiver attending the state's federal suit. The Eleventh Amendment, which applies only to suits "commenced or prosecuted against one of the United States," presents no bar to a state affirmatively entering a federal forum voluntarily to pursue its own interest. But it would violate the fundamental fairness of judicial process to allow a state to proceed in federal court and at the same time strip the defendant of valid defenses because they might be construed to be affirmative claims against the state. When a state authorizes its officials voluntarily to invoke federal process in a federal forum, the state thereby consents to the federal forum's rules of procedure and may not invoke sovereign immunity to protect itself against the interposition of defenses to its action. The scope of these available defenses and the state's concomitant waiver of immunity is a question of federal law and procedure, but well-established principles of sovereign immunity dictate that this waiver be narrowly construed. See, e.g., Atascadero, 473 U.S. at 239-40. For this reason, we hold that to the extent a defendant's assertions in a state-instituted federal action, including those made with regard to a state-filed proof of claim in a bankruptcy action, amount to a compulsory counterclaim, a state has waived any Eleventh Amendment immunity against that counterclaim in order to avail itself of the federal forum.

With these principles in hand, we turn first to Maryland law to determine whether the state has waived its Eleventh Amendment immunity and whether the state's officers were authorized to act in the federal bankruptcy forum, and then to federal law to determine whether the state's filing of a proof of claim or other participation in the bankruptcy court on the merits effected a waiver of immunity to the trustee's action before us.

Under state law, in Maryland's own courts, "[a] waiver of sovereign or governmental immunity from suit generally requires that two

13

conditions be met. First, the Legislature must authorize suits for damages, and second, there must be provision for the payment of judgments." Kee v. State Highway Administration , 545 A.2d 1312, 1317 (Md. 1988). State courts maintain this requirement of legislative authorization for waiver of immunity despite the fact that under the Maryland Constitution, art. V, § 3:

> (a) The Attorney General shall:
>
> (1) Prosecute and defend on the part of the State all cases pending in the appellate courts of the State, in the Supreme Court of the United States or the inferior Federal Courts, by or against the State, or in which the State may be interested, except those criminal appeals otherwise prescribed by the General Assembly.
>
> (2) Investigate, commence, and prosecute or defend any civil or criminal suit or action or category of such suits or actions in any of the Federal Courts or in any Court of this State, or before administrative agencies and quasi legislative bodies, on the part of the State or in which the State may be interested, which the General Assembly by law or joint resolution, or the Governor, shall have directed or shall direct to be investigated, commenced and prosecuted or defended.

While this constitutional language undoubtedly grants the Maryland Attorney General authority to defend federal suits, including the current bankruptcy action, it does not unequivocally grant him the authority to waive the state's sovereign immunity, as required by Atascadero and like cases. Nor is there a necessary implication of such authority, because the Attorney General may, as in this case, defend an action brought in federal court by asserting Eleventh Amendment immunity.

Thus, we conclude that Maryland's defense of this case on the merits in the district court does not indicate a waiver of Eleventh Amendment immunity. Absent legislative authorization, the Maryland

14

Attorney General's power to waive the state's immunity under the Eleventh Amendment is strongly circumscribed. We are satisfied that the action taken in this bankruptcy has not waived the state's immunity with regard to the trustee's action to avoid and recover the payment of income taxes.

Maryland did, however, file an affirmative proof of claim in the debtor's bankruptcy to recover from the bankruptcy estate sales and withholding taxes which the debtor collected for the state from third parties (i.e. employees and clients of the debtor). Under state law, the debtor was obligated to collect these taxes and hold them in trust for the state. See Md. Code Ann. Tax-Gen'l Art.§ 10-906 (withholding of employees' income taxes); Tax-Gen'l Art. § 11-401 (collecting sales and use taxes). The trustee's action in this case, however, to avoid the payment of the debtor's corporate income taxes, does not arise out of the same transaction or occurrence supporting Maryland's proof of claim for unrelated taxes. Thus, this action by the trustee cannot be construed under federal law as a claim in the nature of a compulsory counterclaim to the state's proof of claim. See Fed. R. Civ. P. 13(a) (compulsory counterclaims), made applicable to bankruptcy proceedings, Fed. R. Bankr. P. 7013.

Because of the procedural and factual context of this case, our holding does not reach any defenses that the trustee may have to the state's proof of claim for sales taxes and withholding taxes collected by the debtor from third persons or the possibility of a setoff to that claim in the nature of a permissive counterclaim. Because the trustee has neither pleaded a setoff in this case nor sought to allege a claim in the nature of a permissive counterclaim, we do not have occasion to decide to what extent sovereign immunity might be waived with respect to a setoff. Any consideration of these issues by us would have to await a final order processing the state's proof of claim on the unrelated tax claims.

Accordingly, because we have no "authority to entertain" this action absent Maryland's consent, see Ford Motor , 323 U.S. at 464, we vacate the judgment and remand with instructions to dismiss this adversary action between the trustee and the State of Maryland.

IT IS SO ORDERED

15