In re Michael Scott ROSE and Jennifer Ruth Rose, Debtors.

Jennifer R. ROSE, Plaintiff,

v.

U.S. DEPT. OF EDUCATION; Coordinating Board for Higher Education; Student Loan Program; University of Missouri; Hemar Insurance Corporation of America; Illinois Guarantors Student Asst.; Nebraska Student Loan; and North Star Guarantee, Defendants.

Bankruptcy No. 97–42803–2.
Adversary No. 97–4120–2.

United States Bankruptcy Court,
W.D. Missouri.

Nov. 10, 1997.

---

Thomas L. Griswold, Payne & Jones, Overland Park, KS, for HEMAR.

David J. Hershman, Illinois Student Assistance Comm., Chicago, IL, for Illinois Guarantors Student Asst.

Mark J. Schultz, Gallas & Schultz, Kansas City, MO, for Student Loan Program.

Jennifer Ruth Bragg Rose, Independence, MO, Pro se.

Michael Scott Rose, Independence, MO, Pro se.

John Lewis, Jr., Kansas City, MO, Trustee.

## ORDER

FRANK W. KOGER, Chief Judge.

Debtor Jennifer R. Rose filed a Complaint to determine the dischargeability of her student loans which she owes to the above-named defendants. North Star Guarantee failed to respond to the Complaint; the University of Missouri responded to the Complaint by a Motion to Dismiss the Complaint on the ground that Jennifer Rose's claim against it is barred by the Eleventh Amendment to the United States Constitution; and the rest of the defendants filed answers to the complaint. A trial on the matter was held on October 1, 1997. At trial, the Court announced a default judgment against North Star Guarantee and took the issues as to the remaining defendants under advisement, granting the debtors 15 days to file a brief on the issues, and granting the defendants 15 days from the filing debtors' brief in which to respond.

Debtors did not file a brief; nevertheless, the Missouri Student Loan Program subsequently filed a Motion to Dismiss and Suggestions in Support, also, alleging Eleventh Amendment sovereign immunity. This Order addresses the two Motions to Dismiss. The remaining issues as to the other defendants, i.e., the application of 11 U.S.C. § 523(a)(8)(B), will be addressed by separate order following resolution of the Eleventh Amendment sovereign immunity issues, as explained more fully below.

The evidence at trial, showed that Jennifer Rose obtained student loans; amounting to some $105,000, during the course of her college and law school education. She obtained her law degree in 1995 and now works as a law clerk for the Jackson County Associate Circuit Court earning just over $30,000 per year. Michael Rose is not gainfully employed but instead stays home to care for the parties' two young children. As the fore-

374

bearances on the student loans were about to run out, and realizing they could not make the payments on them under their current situation, the debtors filed their petition in bankruptcy and now seek to have Jennifer's student loans declared dischargeable under the hardship exception to nondischargeability of student loans pursuant to § 523(a)(8)(B).[1]

In response to the debtors' complaint, Defendant University of Missouri filed a Motion to Dismiss, asserting the Complaint should be dismissed against it because the debtors' claims are barred by the Eleventh Amendment to the United States Constitution. The University of Missouri did not file a proof of claim in the debtors' main bankruptcy case. As mentioned above, the Missouri Student Loan Program ("MSLP") has also filed a Motion to Dismiss, asserting the same Eleventh Amendment argument. MSLP did file a proof of claim in the main bankruptcy case.

The Eleventh Amendment, provides, "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States, by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This bar to suits against states in federal courts applies not only to actions brought by citizens of another state, but also to those brought by citizens of the state involved. *See Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974); *Schlossberg v. State of Maryland (In re Creative Goldsmiths of Washington, D.C., Inc.),* 119 F.3d 1140, 1144 (4th Cir.1997). It also applies to state agencies or departments. *Kish v. Verniero (In re Kish),* 212 B.R. 808, 814 (D.N.J.1997) *(citing Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984)).

■ Because the University of Missouri does not enjoy a significant level of autonomy from the State and any judgment against the University would ultimately be derived from the state treasury, the District Court for this District has held that the University is the alter ego or instrumentality of the State and

thus, the Eleventh Amendment applies to it. *Sherman v. Curators of the University of Missouri,* 871 F.Supp. 344 (W.D.Mo.1994). Likewise, MSLP appears to be a state agency administered through the Missouri Coordinating Board for Higher Education under Missouri statute. *See* §§ 173.005, et seq., Mo.Rev.Stat. (1994). As a result, the University of Missouri and MSLP have each sufficiently established that the Eleventh Amendment applies to them.

Two well-established exceptions to Eleventh Amendment immunity exist: Congress may abrogate a state's sovereign immunity through statutory enactments, *see Fitzpatrick v. Bitzer,* 427 U.S. 445, 452–56, 96 S.Ct. 2666, 2669–71, 49 L.Ed.2d 614 (1976), and a state may waive its immunity and agree to be sued in federal court. *See Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 238, 105 S.Ct. 3142, 3146, 87 L.Ed.2d 171 (1985).

■ The issue here is whether, by including § 106 in the Bankruptcy Code, Congress effectively abrogated the states' sovereign immunity. This issue has recently been addressed by several courts, including the Fourth Circuit in *In re Creative Goldsmiths of Washington, D.C., Inc.,* 119 F.3d 1140 (4th Cir.1997), and this Court agrees with the Fourth Circuit's analysis in that case. In sum, relying particularly on the Supreme Court decision in *Seminole Tribe of Florida v. Florida,* 517 U.S. 609, ——, 116 S.Ct. 1114, 1122, 134 L.Ed.2d 252 (1996), the Fourth Circuit held that § 106 is unconstitutional and ineffective in abrogating the states' sovereign immunity.

Section 106(a) provides, in pertinent part:

**§ 106. Waiver of sovereign immunity.**

(a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:

(1) Sections ... 106 [and] ... 523 ... of this title.

---

1. All statutory references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101 through 1330.

(2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.

(3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages. Such order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.

(4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States.

(5) Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law.

(b) A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

(c) Notwithstanding any assertion of sovereign immunity by a governmental unit, there shall be offset against a claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

According to the Supreme Court in *Seminole*, Congress may not abrogate a state's sovereign immunity unless (1) Congress unequivocally expressed its intent to abrogate the immunity; and (2) Congress acted pursuant to a valid exercise of power. *Seminole*,

517 U.S. at ——, 116 S.Ct. at 1123. The first requirement is easily met in § 106: Congress very clearly and unequivocally expressed its intent to abrogate the states' sovereign immunity by allowing suit in federal bankruptcy court. However, as the Fourth Circuit found in *In re Creative Goldsmiths*, § 106 does not pass the second requirement because Congress did not act pursuant to a valid exercise of power when it enacted § 106. 119 F.3d at 145–47.

As the Fourth Circuit held, a look at the Bankruptcy Clause of the Constitution, art. I, § 8, cl. 4 (conferring on Congress the power to establish uniform bankruptcy laws throughout the United States), and Article III (authorizing Congress to vest the judicial power of the United States in lower federal courts), does not end the inquiry as to whether Congress was acting pursuant to a valid exercise of power in the bankruptcy context. Id. at 145. Rather, a proper understanding of the structural balance between state sovereignty and congressional power must also take into account the effects of the Eleventh and Fourteenth Amendments. *Id.*

The Eleventh Amendment, which was passed to counteract an expansion of federal jurisdiction to suits by private persons against unconsenting states, expressly limits federal judicial power over the states. *Id.* (*citing Seminole*, 517 U.S. at ——, —— ——, 116 S.Ct. at 1124, 1130–32). Thus, to give the Eleventh Amendment effect, Congress' powers under Article I cannot be construed to empower it to expand federal jurisdiction by abrogating the states' sovereign immunities. *Id.*

According to the Supreme Court:

Even when the Constitution vests in Congress complete lawmaking authority over a particular area, the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting States. The Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction.

*Seminole*, 517 U.S. at —— —— ——, 116 S.Ct. at 1131–32. Relying on this passage, the

Fourth Circuit said that because the holding in Seminole extended to restrict all federal jurisdiction over the states based on Article I powers (Seminole involved a federal statute passed pursuant to the Indian Commerce Clause, U.S. Const. art. I, § 8, cl. 3, which similarly purported to abrogate the states' sovereign immunities), Congress likewise has no authority under the Bankruptcy Clause, U.S. Const. art. I, § 8, cl. 4, to abrogate state sovereign immunity in federal courts.

Furthermore, although the Seminole Court acknowledged that § 5 of the Fourteenth Amendment was a legitimate source of congressional power to abrogate states' immunities, there is no evidence that in enacting the Bankruptcy Reform Act of 1994, Congress acted under § 5 of the Fourteenth Amendment. In re Creative Goldsmiths, 119 F.3d at 1146.[2] In fact, the Fourth Circuit said:

> [T]he conclusion seems logically inescapable that in passing the 1994 Act Congress exercised the same specifically enumerated Article I bankruptcy power that it has traditionally relied on in enacting prior incarnations of the bankruptcy law dating back to 1800—68 years before the passage of the Fourteenth Amendment.... We will not presume that Congress intended to enact a law under a general Fourteenth Amendment power to remedy an unspecified violation of rights when a specific, substantive Article I power clearly enabled the law.

Id.

In sum, although this Court recognizes that there is contrary authority on this point, this Court agrees with the analysis and conclusion of the Fourth Circuit that in light of Seminole:

> Congress is not empowered to use Article I authority, specifically the Bankruptcy Clause, to circumvent the Eleventh Amendment's restriction on federal jurisdiction. Because there is no evidence that Congress either passed the Bankruptcy

Code under § 5 of the Fourteenth Amendment or sought to preserve the core values specifically enumerated in that amendment, we hold that Congress' effort to abrogate the states' Eleventh Amendment immunity through its 1994 enactment of 11 U.S.C. § 106(a) is unconstitutional and ineffective. See Seminole, 517 U.S. at —— –——, 116 S.Ct. at 1131–32.

In re Creative Goldsmiths, 119 F.3d at 1147. Accord Dept. of Transp. & Dev. v. PNL Asset Mgmt. Co. (In re Fernandez), 123 F.3d 241, 245 (5th Cir.1997) ("There is no evidence that the 1994 Act was passed pursuant to the Fourteenth Amendment or any constitutional provision other than the bankruptcy power of Article I, § 8, cl. 4"); In re Tri–City Turf Club, Inc., 203 B.R. 617, 620 (Bankr.E.D.Ky. 1996) ("The court can find no hint that Congress had in its collective mind Fourteenth Amendment concerns when it enacted Section 106(a) of the Bankruptcy Code"); In re NVR, L.P., 206 B.R. 831, 842 (Bankr.E.D.Va. 1997) ("[T]his court can conceive of no ground which might warrant the 'discovery' of a bankruptcy privilege in the Fourteenth Amendment").

As mentioned, the University of Missouri did not file a proof of claim and it raised the issue of lack of jurisdiction under the Eleventh Amendment from the beginning. As a result, any issues relating to waiver of sovereign immunity do not apply to the University of Missouri.

In contrast, MSLP filed a proof of claim in the main bankruptcy case, filed an Answer to the Complaint in which it only addressed the § 523(a)(8) issues, and only asserted the Eleventh Amendment on the University of Missouri's coattails. As a result, debtors assert MSLP (and any other defendant who might assert sovereign immunity) should be barred from bringing similar motions to dismiss for three reasons: (1) they did not assert the Eleventh Amendment in their answers; (2) other than MSLP, none of the other defendants filed motions to dismiss

---

**2.** When acting pursuant to § 5 of the Fourteenth Amendment, Congress can abrogate the Eleventh Amendment without the states' consent. Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 237–38, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985). However, as the Supreme Court recently an-

nounced, § 5 of the Fourteenth Amendment does not grant Congress a plenary power. City of Boerne v. Flores, —— U.S. ——, —— –——, 117 S.Ct. 2157, 2167–68, 138 L.Ed.2d 624 (1997); In re Creative Goldsmiths, 119 F.3d at 1146.

based on the Eleventh Amendment; and (3) because they all filed proofs of claim, the other defendants have waived their Eleventh Amendment arguments.

■ Debtors' first two arguments fail outright because the Eleventh Amendment argument is jurisdictional, so not only can a party raise it at any time (even on appeal), if it is not raised by the parties, a court is required to determine on its own motion whether Congress has effectively abrogated the states' Eleventh Amendment immunity. *See In re Kish,* 212 B.R. 808, 813 (D.N.J. 1997) ("if not raised by the parties, a court is required to determine on its own motion whether Congress has effectively abrogated the States' Eleventh Amendment immunity"); *In re Fennelly,* 212 B.R. 61, 62 (D.N.J. 1997) ("this Court is required to consider sua sponte whether the Eleventh Amendment deprives this Court and the. Bankruptcy Court of subject matter jurisdiction"). Consequently, even though MSLP did not assert its Eleventh Amendment argument until after trial, because it is jurisdictional, this Court must consider it.

■ Debtors' third argument for denying any motions to dismiss raised by defendants other than the University of Missouri is that by filing proofs of claim in the bankruptcy case, they have waived any Eleventh Amendment argument. Section 106(b) provides that "a governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose."

MSLP addressed this issue in its Suggestions in Support of its Motion to Dismiss, citing *In re Creative Goldsmiths* in support. Unfortunately, instead of filing a brief on any of the Eleventh Amendment issues, Debtor Jennifer Rose wrote two letters to the Court. In the first letter, which was dated the day after the hearing, she indicated that she did not feel qualified to argue the Eleventh Amendment issue and asked instead that the University of Missouri's debt simply be declared nondischargeable on other grounds. At that point, the University of Missouri was the only party actively asserting the Eleventh Amendment argument. It was in this letter that she suggested that the other defendants could not now raise the Eleventh Amendment argument for the three reasons just discussed. She asked in that letter that if she was mistaken in the belief that the other defendants were barred, that she be allowed the opportunity to still file a brief, but unless she was further requested by the Court to do so, she would not file such a brief.

Subsequently, the Attorney General of Missouri, on behalf of MSLP, wrote a letter to the Court. Noting that this Court's direction at the hearing was that the defendants could file briefs only in response to issues raised in Debtors' brief, and since Debtors were "waiving" a brief, MSLP requested permission to file a brief on the eleventh Amendment issue despite Debtors' failure to brief.[3]

The Court then received Jennifer Rose's second letter, which again asserted that the other defendants should be barred from raising the Eleventh Amendment issue and asking that no more briefs be filed.

MSLP then filed its Motion to Dismiss and Suggestions in Support. Although the Court recognizes that the Eleventh Amendment issue is complicated and that Ms. Rose does not feel qualified to brief it, as stated above, it is jurisdictional. If this Court does not address it, the defendants can raise it on appeal, and considering the conflicting authority in the case law on this issue, it appears likely at least MSLP will raise it in an appeal. The Court believes the more economical avenue is to address it now. Consequently, because of the unusual series of events regarding the briefing after trial, this Court is going to allow the parties, including MSLP, any remaining defendants who can establish that they are state agencies entitled to Eleventh Amendment immunity, and the debtors, the opportunity to brief the one remaining issue, which is whether, by filing a proof of claim in a bankruptcy case, a state

---

**3.** Likewise, in response Jennifer Rose's letter, the University of Missouri filed a Reply in Support of Motion to Dismiss, asserting that Debtors' sug- gestion that its debt be declared nondischargeable on the other grounds be denied and that its Motion to dismiss be granted.

waives its Eleventh Amendment sovereign immunity under 11 U.S.C. § 106(b).

CONCLUSION

For the foregoing reasons, this Court finds it lacks jurisdiction to entertain this adversary proceeding against the University of Missouri. Therefore, the Motion to Dismiss filed by the University of Missouri is hereby GRANTED and the Debtors' Complaint as it pertains to the University of Missouri is DISMISSED. Any defendant who can establish it is a state agency may file a brief within 15 days of the date of this Order, addressing two narrow issues: (1) the source of law which provides that the defendant is a state agency or department; and (2) whether, by filing a proof of claim in a bankruptcy case, a state waives its Eleventh Amendment sovereign immunity under 11 U.S.C. § 106(b). Debtors are given 30 days from the date of this Order in which to respond to the arguments raised in such briefs filed by defendants or to otherwise address the narrow issue regarding § 106(b) waiver as outlined above. The parties are reminded that briefs should be limited to these narrow issues. All remaining issues pertaining to the application of § 523(a)(8) remain under advisement and should not be further briefed. As announced at hearing, default judgment is entered against Defendant North Star Guarantee.