**TENNESSEE STUDENT ASSISTANCE CORPORATION, Appellant,**

v.

**Deanna L. GLOVER, Debtor–Appellee.**

No.  CIV 2:00–CV–02333.

United States District Court, C.D. Illinois, Danville/Urbana Division.

June 21, 2001.

Sally Ramsey, Marvin E. Clements, Jr., Office of the Attorney General, Nashville, TN, for Plaintiff.

Marshall Dusenbury, Kankakee, IL, for Defendant.

## ORDER

McCUSKEY, District Judge.

This case is an appeal from the United States Bankruptcy Court for the Central District of Illinois (Bankruptcy Case No. 00–91250) brought pursuant to 28 U.S.C. § 158. This court reverses the order of the Bankruptcy Court.

## FACTS

Between August 23, 1993, and July 24, 1998, the Debtor, Deanna L. Glover, signed ten separate promissory notes for students loans. These promissory notes were guaranteed by the Tennessee Student Assistance Corporation ("TSAC"). On May 23, 2000, Glover filed for relief under Chapter 7 of the Bankruptcy Code. At the time the suit was filed with the Bankruptcy Court, Glover owed a balance of $35,496. On July 25, 2000, Glover filed a Petition for Order Declaring Student Loans Dischargeable under 11 U.S.C. § 523(a)(8), claiming an undue hardship in her ability to pay the student loans. Thereafter, TSAC, by special appearance, filed a Motion to Dismiss for Lack of Jurisdiction and Brief in Support. TSAC argued that it was a unit of government of the State of Tennessee and had not consented to this suit. Accordingly, TSAC contended that the Bankruptcy Court did not have jurisdiction. The Bankruptcy Court found that jurisdiction in this matter had been statutorily granted under 11 U.S.C. § 106(a), wherein Congress saw fit to abrogate sovereign immunity as to a governmental unit. As a result, on October 24, 2000, TSAC's motion to dismiss was denied. On November 3, 2000, TSAC filed a Notice of Appeal.

## ANALYSIS

On appeal, TSAC argues that the Bankruptcy Court erred when it found that jurisdiction in this matter had been statutorily granted under § 106(a), wherein Congress saw fit to abrogate sovereign immunity as to a governmental unit. This court reverses the order entered by the Bankruptcy Court.

This court's standard of review of a bankruptcy court's decision is as follows: "the bankruptcy court's findings of fact are upheld unless clearly erroneous and the legal conclusions are reviewed de novo." *In re A-1 Paving & Contracting, Inc.*, 116 F.3d 242, 243 (7th Cir.1997). This court agrees with the Bankruptcy Court that the material facts in this case are not significantly in dispute. Here, the parties' dispute is in regard to a question of law: whether Congress had the authority to abrogate the States' sovereign immunity under § 106(a), and if so, whether Congress validly exercised such authority. This court's review of the Bankruptcy Court's ruling is de novo.

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment not only bars suits against states in federal court brought by citizens of another state, but also suits brought by citizens of the state. *Hans v. Louisiana*, 134 U.S. 1, 10, 10 S.Ct. 504, 33 L.Ed. 842 (1890). The Supreme Court has stated that "[t]his express constitutional limitation denies to the federal courts authority to entertain a suit brought by private parties against a state without its consent." *Ford Motor Co. v. Department of Treasury of Ind.*, 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945). This immunity rests on a two-part supposition: (1) "each State is a sovereign entity in our federal system," and (2) "it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without consent." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (*quoting Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)).

Sovereign immunity under the Eleventh Amendment is not absolute. First, a state may waive its sovereign immunity and consent to suit in federal court. See *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). Second, Congress can abrogate a state's Eleventh Amendment sovereign immunity. To determine whether Congress validly abrogated the state's sovereign immunity, this court must answer two questions: first, whether Congress has "unequivocally expressed its intent to abrogate the immunity," and second, whether Congress has acted "pursuant to a valid exercise of power." *Seminole Tribe of Fla.*, 517 U.S. at 55, 116 S.Ct. 1114. This court first addresses the question of whether Congress clearly abrogated State sovereign immunity under § 106.

"[T]o abrogate the States' Eleventh Amendment immunity from suit in federal court, which the parties do not dispute would otherwise bar these actions, Congress must make its intention 'unmistakably clear in the language of the statute.'" *Hoffman v. Connecticut Dept. of Income Maintenance*, 492 U.S. 96, 101, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989) (*quoting Atascadero State Hosp.*, 473 U.S. at 242, 105 S.Ct. 3142). A valid abrogation must be stated in such clear language as to preclude any other reasonable interpretation. *Atascadero State Hosp.*, 473 U.S. at 239–40, 105 S.Ct. 3142. Upon enacting the Bankruptcy Improvement Act of 1994, 11 U.S.C. § 106(a) expressly abrogated the states' sovereign immunity. "The language of new § 106(a), entitled 'Waiver of sovereign immunity,' would seem to confirm ... that Congress has now clearly abrogated state sovereign immunity from suit in federal court." *In re Creative Goldsmiths of Washington, D.C., Inc.*, 119 F.3d 1140, 1144 (4th Cir.1997), *cert. denied* by *Schlossberg v. Maryland Comptroller*

*of Treasury*, 523 U.S. 1075, 118 S.Ct. 1517, 140 L.Ed.2d 670 (1998). That section reads:

Notwithstanding an assertion of sovereign immunity, *sovereign immunity is abrogated as to a governmental unit* to the extent set forth in this section with respect to the following:

(1) Sections ... 106 ... 523 ... of this title.

(2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.

(3) The court may issue against a governmental unit an order, process, or judgment under such sections of the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages ...

(4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States.

11 U.S.C. § 106(a) (Emphasis added).

Although Congress clearly intended to abrogate the states' sovereign immunity in § 106(a), this court must next address the question of whether Congress had the power to do so in light of the Eleventh Amendment. In *In re Creative Goldsmiths of Washington, D.C., Inc.*, the Fourth Circuit stated:

Were we to read only the Bankruptcy Clause of the Constitution, art. I, § 8, cl. 4 (conferring on Congress the power "[t]o establish ... uniform Laws on the subject of Bankruptcies throughout the

United States"), and Article III (authorizing Congress to vest the judicial power of the United States in lower federal courts), we might readily conclude that the states in subscribing to the Constitution conferred on the federal government the power to enact bankruptcy laws for enforcement in federal courts which, for that purpose, would have jurisdiction over the states. But as the Court in *Seminole* instructed, a proper understanding of the structural balance between state sovereignty and congressional power must take into account the effects of the Eleventh and Fourteenth Amendments.

As *Seminole* explains, the Eleventh Amendment was passed to counteract an expansion of federal jurisdiction to suits by private persons against unconsenting states, which had never been contemplated by the founders in establishing the judicial power under Article III. [See *Seminole Tribe of Fla.*, 517 U.S. at 57, 69–73, 116 S.Ct. 1114]. The Eleventh Amendment thus expressly limited federal judicial power over the states. Accordingly, to give the Eleventh Amendment effect, Congress' powers under Article I cannot be construed to empower it to expand federal jurisdiction by abrogating the states' sovereign immunity.

*In re Creative Goldsmiths of Washington, D.C., Inc.*, 119 F.3d at 1145.

In *Seminole*, the Court asked, "Was the Act in question passed pursuant to a constitutional provision granting Congress the power to abrogate?" *Seminole Tribe of Fla.*, 517 U.S. at 59, 116 S.Ct. 1114. In answering, the Court in *Seminole* stated:

Even when the Constitution vests in Congress complete lawmaking authority over a particular area, the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting States. The Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction.

*Seminole Tribe of Fla.*, 517 U.S. at 72, 116 S.Ct. 1114. It would seem illogical to uphold the constitutional principles set forth in *Hans v. Louisiana*, mainly that the judicial powers of the United States do not encompass a suit brought against a State by one of its citizens, and to also hold that Congress may ignore this principle in exercising its Article I powers. *Hoffman*, 492 U.S. at 105, 109 S.Ct. 2818 (Scalia, J., concurring).

Since *Seminole* serves to restrict all federal jurisdiction over the states based on Article I powers, it stands to reason Congress does not have the authority under the Bankruptcy Clause to abrogate state sovereign immunity in federal courts. But, *Seminole* identified § 5 of the Fourteenth Amendment as an avenue of validly abrogating states' sovereign immunity. See *Seminole Tribe of Fla.*, 517 U.S. at 59 116 S.Ct. 1114. "[B]y expanding federal power at the expense of state autonomy," § 5 "had fundamentally altered the balance of state and federal power struck by the Constitution" and "expressly provided that 'The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article.'" *Seminole Tribe of Fla.*, 517 U.S. at 59, 116 S.Ct. 1114 (*quoting* U.S. Const. amend. XIV, § 5). Pursuant to this power, Congress can abrogate states' sovereign immunity under the Eleventh Amendment, without their consent. *Atascadero State Hosp.*, 473 U.S. at 238, 105 S.Ct. 3142. But, § 5 does not grant Congress a plenary power. *City of Boerne v. Flores*, 521 U.S. 507, 517, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). Section 5 is an affirmative

grant of power to Congress. "Nevertheless, we have also recognized that the same language that serves as the basis for the affirmative grant of congressional power also serves to limit the power." *City of Boerne,* 521 at 519, 117 S.Ct. 2157. "Correctly viewed, § 5 is a positive grant of legislative power authorizing Congress to exercise its discretion in determining whether and what legislation is needed to secure the guarantees of the Fourteenth Amendment." *Katzenbach v. Morgan,* 384 U.S. 641, 651, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966). Congress' power "extends only to enforc[ing] the provisions of the Fourteenth Amendment." *City of Boerne,* 521 U.S. at 519, 117 S.Ct. 2157. "Any suggestion that Congress has a substantive, non-remedial power under the Fourteenth Amendment is not supported by our case law." *City of Boerne,* 521 U.S. at 527, 117 S.Ct. 2157.

There is no evidence that Congress acted pursuant to § 5 of the Fourteenth Amendment in enacting the Bankruptcy Reform Act of 1994. As the Fourth Circuit stated:

> [T]he conclusion seems logically inescapable that in passing the 1994 Act Congress exercised the same specifically enumerated Article I bankruptcy power that it has traditionally relied on in enacting prior incarnations of the bankruptcy law dating back to 1800–68 years before the passage of the Fourteenth Amendment. See Law of Apr. 4, 1800, ch. 19, 2. Stat. 19 (repealed 1803). We will not presume that Congress intended to enact a law under a general Fourteenth Amendment power to remedy an unspecified violation of rights when a specific, substantive Article I power clearly enabled the law.

*In re Creative Goldsmiths of Washington, D.C., Inc.,* 119 F.3d at 1146.

If § 5 of the Fourteenth Amendment is used to allow abrogation of state sovereign immunity pursuant to § 106(a), this same argument could be used to justify every Congressional act as a requirement of due process. *In re Creative Goldsmiths of Washington, D.C., Inc.,* 119 F.3d at 1146–47. This extension of Congressional power under § 5 would be clearly repugnant to the result in *Seminole.*

Thus, the Fourth Circuit found Congress' enactment of § 106(a) to be unconstitutional, as have other Circuit Courts of Appeal. *In re Creative Goldsmiths of Washington, D.C., Inc.,* 119 F.3d at 1146–47; *Mitchell v. Franchise Tax Bd. (In re Mitchell),* 209 F.3d 1111, 1121 (9th Cir. 2000); *Sacred Heart Hosp. v. Pennsylvania (In re Sacred Heart Hosp.),* 133 F.3d 237, 245 (3d Cir.1998); *Elias v. United States (In re Elias),* 218 B.R. 80, 86 (9th Cir.BAP1998); *see also In re Peterson,* 254 B.R. 740, 744–45 (Bankr.N.D.Ill.2000).

In holding that it had jurisdiction over the subject adversary proceeding and over TSAC, the Bankruptcy Court found persuasive the argument that, if § 106(a) did not abrogate the States' sovereign immunity, the United States bankruptcy courts would be without authority to issue any order, judgment, or decree affecting the interest of a state or a unit of a state, absent the express consent of the governmental unit. Although a valid argument, this court has found the holding in *Seminole,* along with the holdings of the various Circuit Courts of Appeal, as compelling authority which requires the conclusion that § 106(a) violates the Eleventh Amendment.

## CONCLUSION

In summary, Congress clearly expressed an intent to abrogate the states' sovereign immunity in the plain language of § 106(a). However, Congress lacked

the power to do so in light of the Eleventh Amendment. Because there is a lack of evidence supporting Congress' passing of the Bankruptcy Code pursuant to § 5 of the Fourteenth Amendment, this court holds that Congress' effort to abrogate the states' Eleventh Amendment sovereign immunity through § 106(a) is unconstitutional. Accordingly, the decision of the Bankruptcy Court is REVERSED. This case is remanded to the Bankruptcy Court with directions that TSAC be dismissed from the action.