In re Jack Bartlett SCHMITT, Betti Renee Schmitt, Debtors.

Betti Renee SCHMITT, Plaintiff,

v.

MISSOURI WESTERN STATE COLLEGE, et al., Defendants.

Bankruptcy No. 97–50921–ABF. Adversary No. 98–5009–ABF.

United States Bankruptcy Court, W.D. Missouri.

April 30, 1998.

Alden S. Lance, Savannah, MO, for Plaintiff.

Christie A. Kincannon, Assistant State Attorney General, Jefferson City, MO, for Defendants.

## MEMORANDUM OPINION ON SOVEREIGN IMMUNITY

ARTHUR B. FEDERMAN, Bankruptcy Judge.

Plaintiff/debtor Betti Renee Schmitt filed an adversary proceeding to determine the dischargeability of a student loan payable to Missouri Western State College, et al., pursuant to 11 U.S.C. § 523(a)(8)(A) and (B). Defendant, Missouri Student Loan Program, by and through the Attorney General of Missouri, moved to dismiss the proceeding in light of the Eleventh Amendment to the United States Constitution (the Constitution). Defendant contends that this Court does not have jurisdiction to entertain a suit seeking to discharge a debt due to a state agency. Plaintiff contends that this is a core proceeding under 28 U.S.C. § 157(b)(2) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. The issue raised by the state's motion to dismiss is whether Missouri, or any other state, can excuse itself from the bankruptcy process by raising a sovereign immunity defense to dischargeability actions brought by a debtor or to actions to enforce the bankruptcy discharge. Under current Court interpretation of the Eleventh Amendment, a state has such a right. The Supreme Court's interpretation of the Eleventh Amendment, however, allows a debtor to bring an action for injunctive relief against an appropriate state official pursuant to the doctrine of *Ex Parte Young.* Since plaintiff here did not list any state official as a defendant, but simply filed suit against a Missouri state agency, her Complaint will be dismissed.

## DISCUSSION

Preliminarily, I point out that the bankruptcy process hinges on the Bankruptcy Court having the jurisdiction to either restructure or discharge a debtor's obligations, based on that debtor's financial circum-

stances.[1] In order to avoid a piecemeal approach to the bankruptcy process, the Constitution grants Congress the authority to enact uniform laws on the subject of bankruptcy[2]. Those having even a passing familiarity with the bankruptcy process are aware of the frequent presence of states and their agencies in bankruptcy court proceedings. For example, the Missouri Department of Revenue is listed as a creditor in 17.5 percent of the cases pending in the Western District of Missouri. And many debtors in Missouri owe taxes to other states. Many other debtors, such as this one, owe student loans which were guaranteed, and upon default are assumed by, agencies of the State of Missouri as well as agencies of other states.

The Bankruptcy Code (the Code), as enacted in 1978, recognized the drastic impact that state claims of sovereign immunity could have on these bankruptcy proceedings. Section 106 of the Code, as originally enacted, provided for waiver of sovereign immunity in certain narrow circumstances. In *Hoffman v. Connecticut Department of Income Maintenance*, the Supreme Court held that in enacting section 106, Congress had not intended to waive states' sovereign immunity as to causes of action for preferential transfers.[3] The Court did not find in the text of the statute an "unmistakably clear" intent by Congress to waive sovereign immunity, so no such waiver was found.[4] Thereafter, in order to make it perfectly clear, Congress amended the Code in 1994 to provide that sovereign immunity is abrogated as to governmental units with respect to certain specific sections of the Code.[5] As relevant here, Congress specifically abrogated the sovereign immunity defense as to actions brought for a determination of dischargeability under Section 523 of the Code.[6]

The application of Section 106 is dependent on the power of Congress to abrogate sovereign immunity in light of the Eleventh Amendment to the Constitution. The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted

1. 28 U.S.C. §§ 151 and 157.

2. Art. I, § 8, cl. 4, which states in pertinent part: The Congress shall have power ... To establish ... uniform laws on the subject of bankruptcies throughout the United States.

3. 492 U.S. 96, 101–02, 109 S.Ct. 2818, 2823, 106 L.Ed.2d 76 (1989).

4. *Id.*, 492 U.S. at 101, 109 S.Ct. at 2822.

5. 11 U.S.C. § 106. Section 106 reads in its entirety as follows:
(a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:
(1) Sections 105, 106, 107, 108, 303, 346, 362, 363, 364, 365, 366, 502, 503, 505, 506, 510, 522, 523, 524, 525, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 728, 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title.
(2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.
(3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages. Such order or judgment for a costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.
(4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States.
(5) Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law.
(b) A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.
(c) Notwithstanding any assertion of sovereign immunity by a governmental unit, there shall be offset against a claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

6. 11 U.S.C. § 106(a)(1).

against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.[7]

By its text, this provision grants sovereign immunity in the federal courts only as to actions in which the court's jurisdiction is based on diversity of citizenship.[8] Bankruptcy actions in which a debtor seeks to discharge obligations to her own state would not be impacted by the plain language of the Eleventh Amendment. However, in *Hans v. Louisiana*, the Supreme Court held, with certain exceptions, that the Eleventh Amendment prohibits Federal Courts from taking jurisdiction over any suit against an unconsenting state, whether jurisdiction is based on diversity or on a federal question.[9] In *Pennsylvania v. Union Gas Co.*, the Court, nevertheless, found that the Interstate Commerce Clause granted Congress the power to abrogate state sovereign immunity.[10] But, in *Seminole Tribe of Florida v. Florida*, the Court overruled *Union Gas* and held that Congress may not use its Article I powers to abrogate sovereign immunity.[11] To do so, the Court held, would violate the Court's expansive interpretation of the Eleventh Amendment.[12] Relying on *Seminole Tribe*, several lower courts, including this one, have held that Section 106(a), which purports to abrogate sovereign immunity, is contrary to the Eleventh Amendment, and therefore unconstitutional.[13] Based on those decisions, this case, as captioned, must be dismissed. However, debtor may be able to seek a determination of dischargeability by bringing her action against the state official charged with enforcing the obligation owed by her.[14]

The Supreme Court's decision in *Seminole Tribe* was joined by five members of the Court. The issue which split the Court was whether the Eleventh Amendment bars all federal court suits against states, or just those based on diversity of citizenship jurisdiction. The majority held that the Eleventh Amendment bars Congress from abrogating sovereign immunity in both instances, unless Congress is acting pursuant to the Privileges and Immunities Clause of the Fourteenth Amendment.[15] In other words, the majority held that unless the state is acting contrary to rights granted citizens by the Constitution, it cannot be sued in Federal Court, even if it is acting in violation of federal statutory law. The four dissenters argued that the Eleventh Amendment does not immunize states from all federal court actions. If a state's actions contravene federal law, which is supreme, the dissent would allow the state to be sued by the aggrieved party in Federal Court.

The majority, and the dissent, also considered the applicability of *Ex Parte Young* [16] to this issue. In *Young*, a Federal Court had

7.  U.S. Const. amend. XI.

8.  *Id.*

9.  134 U.S. 1, 10, 10 S.Ct. 504, 505, 33 L.Ed. 842 (1890).

10. 491 U.S. 1, 14, 109 S.Ct. 2273, 2281, 105 L.Ed.2d 1 (1989) (citing U.S. Const. art. I, § 8, cl. 3).

11. 517 U.S. 44, 45–48, 116 S.Ct. 1114, 1119, 134 L.Ed.2d 252 (1996).

12. *Id.* at 63–66, 116 S.Ct. at 1128.

13. *Sacred Heart Hospital of Norristown v. Commonwealth of Pennsylvania Dept. of Public Welfare (In re Sacred Heart Hospital of Norristown)*, 133 F.3d 237, 243 (3rd Cir.1998); *Dept. of Transp. and Dev. v. PNL Asset Management Co. LLC (In re Fernandez)*, 123 F.3d 241, 243 (5th Cir.1997); *Schlossberg v. Maryland (In re Creative Goldsmiths of Washington D.C., Inc.)*, 119 F.3d 1140, 1145 (4th Cir.1997); *ABEPP Acquisition Corp. v. Georgia Dept. of Revenue (In re ABEPP Acquisition Corp.)*, 215 B.R. 513, 518 (6th Cir. BAP 1997) *Rose v. United States Dept. of Educ. (In re Rose)*, 214 B.R. 372, 376 (Bankr. W.D.Mo.1997); *In re NVR L.P.*, 206 B.R. 831, 839 (Bankr.E.D.Va.1997).

14. *See Seminole Tribe*, 517 U.S. at 71, n. 14 and n. 16, 116 S.Ct. at 1131, n. 14 and n. 16.

15. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985). Although it has been argued that Congress acted pursuant to the Privileges and Immunities clause when it abrogated sovereign immunity as to certain bankruptcy actions, that argument has been rejected, as well it should. *See, Dept. of Transp. and Dev. v. PNL Asset Management Co. LLC (In re Fernandez)*, 123 F.3d 241, 245 (5th Cir.1997); *Schlossberg v. Maryland (In re Creative Goldsmiths of Washington D.C., Inc.)*, 119 F.3d 1140, 1146 (4th Cir.1997).

16. 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

issued a preliminary injunction prohibiting the Attorney General of Minnesota from enforcing a state statute concerning railroad rates. The basis for the injunction was that the state's procedure was a taking without due process in violation of the Fourteenth Amendment.[17] At the time of the preliminary injunction, the Attorney General had taken no action to enforce the statute. He, thereafter, violated the injunction by bringing suit in state court to enforce the Minnesota statute. He was held in contempt, and he filed a petition for a writ of habeas corpus. In denying the writ, the Supreme Court held that Federal Courts could enjoin state officials from bringing suit if the relief to be sought by such suit would violate the Constitution.[18] In so doing the Court recognized that "the Supremacy Clause makes federal law paramount over the contrary positions of state officials; the power of federal courts to enforce federal law thus presupposes some authority to order state officials to comply."[19] Therefore, the *Young* doctrine states that "[a] Federal Court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of Federal law."[20] The *Young* doctrine was created to temper the Court's expansive view of the Eleventh Amendment, which left Federal Courts powerless to remedy violations of Federal law by states. "Remedies designed to end a continuing violation of Federal law are necessary to vindicate the federal interest in assuring the supremacy of that law."[21]. Consistent with its intent to use this remedy only against continuing violations, the Court has limited the *Young* doctrine to suits seeking prospective relief only, and not to those seeking retrospective monetary relief against the state.[22]

In *Seminole Tribe*, the majority found that the *Young* doctrine did not apply because, in enacting the Indian Gaming Regulatory Act Congress had created "a detailed remedial scheme for the enforcement against a State of a statutorily created right," and that the Court "should hesitate before casting aside those limitations and permitting an action against a state officer based on *Ex Parte Young*."[23] The statute at issue in *Seminole Tribe* required a step-by-step process for tribal-state compacts regarding gaming. First, the Indian tribe was required to request the state to enter into negotiations for the purpose of entering a compact. Upon receiving such a request, the state was required to negotiate in good faith. If the tribe contended the state did not do so, the Act authorized the tribe to file suit in the United States District Court to obtain an Order requiring the state to negotiate in good faith. If, within sixty days of the District Court Order requiring such negotiation, no compact had been concluded, the Indian tribe and the state were each required to submit a proposed compact that represented their last best offer for a compact to a mediator appointed by the Court. The mediator was then required to choose between the two compacts. If the state did not consent to the compact chosen by the mediator within an additional 60–day period, the mediator was to notify the Secretary of the Interior. The Secretary of the Interior was required to prescribe procedures under which gaming could be conducted on the Indian lands. The Court found that allowing an *Ex Parte Young* suit would have enabled the Indian tribes to ignore the Congressional intent that this detailed procedure be followed. As the Court said:

17. *Id.*, 209 U.S. at 149–50, 28 S.Ct. at 449–50.

18. *Id.*, 209 U.S. at 167, 28 S.Ct. at 457.

19. *New York v. United States*, 505 U.S. 144, 179, 112 S.Ct. 2408, 2430, 120 L.Ed.2d 120 (1992). *See also* Erwin Chemerinsky, Federal Jurisdiction § 7.5, at 346 (1989) (stating that "the decision in *Ex Parte Young* long has been recognized as limiting the effect of the Eleventh Amendment and of ensuring state compliance with federal law").

20. *Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979).

21. *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985).

22. *Edelman v. Jordan,* 415 U.S. 651, 677, 94 S.Ct. 1347, 1362, 39 L.Ed.2d 662 (1974).

23. *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 72–74, 116 S.Ct. 1114, 1132, 134 L.Ed.2d 252 (1996).

If Section 2710(d)(3) [the good faith requirement] could be enforced in a suit under *Ex Parte Young,* Section 2710(d)(7) [the step-by-step remedial provision described above] would have been superfluous; it is difficult to see why an Indian tribe would suffer through the intricate scheme of Section 2710(d)(7) when more complete and more immediate relief would be available under *Ex Parte Young.*[24]

■ The granting of a bankruptcy discharge enjoins a creditor from enforcing the debt due it. As such, it is a form of prospective relief. The *Seminole* dissent argues that the majority's opinion would bar enforcement against the states of comprehensive Federal statutes such as the bankruptcy, copyright, and antitrust laws. In response, the majority specifically noted that persons aggrieved by a state's continuing violation of such statutes may obtain injunctive relief under *Ex Parte Young* in order to remedy a state officer's ongoing violation of Federal law.[25] Unlike the statute at issue in *Seminole,* the Code does not establish a detailed remedial scheme for obtaining the discharge of a student loan held by the state.[26] Indeed, states are treated like all other creditors, and the standard is a simple one involving two questions. The first is whether the loan first became due more than seven years before the date of the filing of the petition.[27] If not, the second question is whether excepting such debt from discharge would impose an undue hardship on the debtor and the debtor's dependents.[28] The problem is that, as to states, there is no practical mechanism for determining the dischargeability of a student loan if such determination is barred by the Eleventh Amendment. Thus, the Code and, in particular, the abrogation provisions of Section 106 are not at all like the statute considered in *Seminole Tribe,* where the Court was concerned that *Ex Parte Young*

could be used to short-circuit the step-by-step procedure created by Congress to remedy violations. Here, there is no such step-by-step procedure. There is just one step— the obtaining of a dischargeability determination, which determination can best be performed by the Bankruptcy Court. In enacting Section 106 in 1978, and in making its attempt to abrogate sovereign immunity even more specific in 1994, Congress has made clear that it intends to require states to participate in certain aspects of the bankruptcy process. Therefore, the use of *Ex Parte Young* to enjoin state officials from taking enforcement action as to dischargeable debts is consistent with, not contrary to, Congressional intent.

In repeatedly enacting legislation which requires states to be bound by certain Orders of the Bankruptcy Courts, Congress has acted wisely to insure the efficient and effective operation of the bankruptcy process. It might be argued that assertion of Eleventh Amendment immunity by states does not leave debtors without a remedy, since state courts do have concurrent jurisdiction to hear dischargeability actions involving student loans.[29] But states which use Sovereign Immunity as a shield against dischargeability actions in federal court can be expected to use the same defense in their own courts. And, even if states were to enact legislation waiving their sovereign immunity as to actions brought by bankruptcy debtors[30], it is the bankruptcy courts, and not state courts, which are uniquely qualified to make such determinations, and which do so on a daily basis. Federal courts considering the legislation at issue in *Seminole Tribe* had no particular expertise in deciding whether a state was negotiating in good faith with an Indian tribe. By contrast, Bankruptcy Courts have been charged with deciding the dischargeability of obligations almost contin-

---

24. *Id.* at 74–76, 116 S.Ct. at 1133.

25. 517 U.S. at 72, n. 16, 116 S.Ct. at 1131, n. 16. *See also,* 517 U.S. at 71, n. 14, 116 S.Ct. at 1131, n. 14.

26. *See* 11 U.S.C. § 523(a)(8).

27. *Id.* at § 523(a)(8)(A).

28. *Id.* at § 523(a)(8)(B).

29. 28 U.S.C. § 1334(b).

30. *See, Schlossberg v. Maryland (In re Creative Goldsmiths of Washington D.C., Inc.),* 119 F.3d 1140, 1149 (4th Cir.1997) (holding that an act of legislature may be required to waive sovereign immunity).

**74**

uously since the founding of the Republic. Unlike state courts, which on a regular basis determine whether a debt is owed, bankruptcy courts are charged with determining whether a debtor should be allowed to discharge or restructure the obligation to pay such debt. Determination of those issues involves a review of the debtor's entire financial picture, including not just the debt at issue but also the other debts owed, the assets available, the ongoing income and expenses, and other factors. Often a debtor will owe student loans, taxes, and other obligations to more than one state. The risk of inconsistent determinations by the state courts as to dischargeability, or as to the restructuring of obligations due those states, is obvious. Therefore, in enacting Section 106 and its predecessor, and thereby making clear its intent to abrogate sovereign immunity in certain limited circumstances, Congress has wisely chosen a course which enables the Bankruptcy Courts to consider all debts of a debtor, and all a debtor's creditors, in one forum.

In asserting Eleventh Amendment immunity, the State of Missouri is in effect asking not to be bound by decisions of the Bankruptcy Courts to discharge or restructure a debtor's obligations. Congress clearly intended to give Bankruptcy Courts that authority. Under the current interpretation of the Eleventh Amendment, however, suits to enforce that authority cannot be maintained against the states. Therefore, in order to uphold the Congressional intent, actions under *Ex Parte Young* against state officials to obtain a determination of dischargeability— to obtain injunctive relief—are appropriate. Here, no state official has been named as a defendant. Therefore, the motion of the State of Missouri to dismiss these proceedings pursuant to the Eleventh Amendment will be SUSTAINED.

An Order consistent with this Memorandum Opinion will be entered this date.