### In re Adrian KAHL, Kellie J. Kahl, Debtors.

### Kellie J. Kahl, Plaintiff,

### v.

### Texas Higher Education Coordinating Board, Defendant.

### and

### Andrew N. Schwartz Chapter 7 Trustee, Defendant.

Bankruptcy No. 99–14552.
Adversary No. 99–0486.

United States Bankruptcy Court,
E.D. Pennsylvania.
Philadelphia, Division.

Oct. 29, 1999.

---

**526**

Daniel K. Astin, Office of the U.S. Trustee, Philadelphia, PA,

Mark Blank, Jr., Paoli, PA,

Andrew N. Schwartz, Trustee, Philadelphia, PA,

Patrick Tyler, Attorney General, State of Texas, Austin, TX.

1. The Court also has inherent authority to determine the extent of its jurisdiction over both the subject matter and the parties involved in the instant proceeding. *See, Trading Co. of North America, Inc. v. Bristol Twp. Authority*, 47 F.Supp.2d 563, 565–66 (E.D.Pa. 1999); *In re Neary*, 220 B.R. 864, 865 n. 1 (Bankr.E.D.Pa.1998); *Matter of Youngstown Steel Tank Co.*, 27 B.R. 596, 598 (W.D.Pa.

## OPINION

STEPHEN RASLAVICH, Bankruptcy Judge.

Before the Court is a motion filed by defendant Texas Higher Education Coordinating Board ("Coordinating Board") to dismiss this adversary proceeding against it on grounds that it is immune from suit under the Eleventh Amendment to the United States Constitution. After the conclusion of a hearing held September 13, 1999, the Court took the matter under advisement. For the reasons stated more fully below, the Coordinating Board's motion is granted, and the instant adversary proceeding is dismissed.

## JURISDICTION

The Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a), § 157(b)(1) and (b)(2)(A), (I) and (O).[1]

## BACKGROUND

On April 7, 1999 debtors Adrian and Kellie J. Kahl filed a joint petition for relief under Chapter 7 of the United States Bankruptcy Code (the "Code"). 11 U.S.C. §§ 101–1330. It is undisputed that debtor Kellie J. Kahl ("Debtor") is indebted to the Coordinating Board for educational loans used to finance a post secondary education. In the complaint commencing this adversary proceeding the Debtor alleged that the amount owed to the Coordinating Board is $12,801. The Debtor also alleged that she is indebted to Sallie Mae—the Student Loan Marketing Association—and the Texas Guaranteed Student Loan Corporation for other student loan debts totaling approximately $64,027.[2] While Sallie Mae filed

1983); Fed.R.Bankr.Proc. 7012(b); Fed. R.Civ.Proc. 12(h)(3).

2. The Court Observes that on Schedule F of their petition the Debtors listed total unsecured nonpriority claims in the amount of $69,788, the largest component of which consisted of education loans for debtor Kellie J. Kahl in the approximate amount of $59,383.

proofs of claim in this case, which it subsequently assigned to the Texas Guaranteed Student Loan Corporation, the Coordinating Board did not file a proof of claim.[3] Though the Debtor did not dispute liability for the foregoing student loan debts on Schedule F of the joint bankruptcy petition, she nonetheless has commenced adversary proceedings against each of the above creditors requesting a determination by this Court as to the dischargeability of such debts.

The complaint commencing the instant adversary proceeding was filed on July 14, 1999. By means of the instant litigation the Debtor seeks to obtain a determination of the dischargeability of the debt for student loans owed to the Coordinating Board under Code § 523(a)(8), the "hardship discharge" provision of the Bankruptcy Code. The Debtor contends that despite using the funds obtained by these loans to finance a college education, she was unable, after approximately eight years of trying, to achieve even the minimum grade point average (alleged to be 2.0) required for graduation. As part of her case in chief the Debtor contends that in light of her substandard academic performance, Texas Lutheran College should not have permitted her to continue her education.[4] She alleges that the college improperly permitted her to continue her studies because it was "short of students and needed [her] tuition money in order to stay afloat." Complaint, at ¶ 17. The Debtor also alleges that she is 29 years of age, married, and the mother of a one year old child. Further, that she has predominantly held only minimum wage jobs with no benefits, is not currently employed, and, due in part to numerous health problems and a lack of education, has no prospect of attaining gainful employment in the foreseeable future. The Debtor's only present source of income is her husband's wages which total approximately $855 per month net of taxes. *See* Chapter 7 Petition, Schedule I. It is also alleged that the Debtor and her family reside with her parents. The Debtor contends that excepting the debt owed to the Coordinating Board from discharge will visit an undue hardship on both her and her dependents within the meaning of Code § 523(a)(8).

The Coordinating Board appears in this proceeding through the Office of the Attorney General of the State of Texas for the limited purpose of petitioning this Court for dismissal of this lawsuit. The Board's motion to dismiss was filed on August 13, 1999. The Board seeks dismissal on grounds that it is immune from suit in this Court by virtue of the Eleventh Amendment to the United States Constitution. In this regard, it argues that it neither consented to a suit by the Debtor in the bankruptcy court, nor waived its immunity from such a suit under the Eleventh Amendment. Additionally, relying on the decision of the Third Circuit Court of Appeals in *In re Sacred Heart Hospital of Norristown*, 133 F.3d 237 (3d Cir.1998), the Coordinating Board argued that Code § 106(a)—purporting to abrogate state sovereign immunity in federal court—is

---

Of this amount, only $5,000 was listed as being owed to the Coordinating Board. The Court also observes that while debts to both the Coordinating Board and Sallie Mae are included on Schedule F, no debt to the Texas Guaranteed Student Loan Corporation was listed. While no explanation for the foregoing discrepancies was provided in either the pleadings or at oral argument on the motion, such issue is not material to the disposition of the matter now before the Court.

**3.** The underlying bankruptcy case is a "no assert" Chapter 7 case. Upon review of the case file the Court observes that the notice

advising creditors of the commencement of the case and of the Code § 341 first meeting of creditors instructed creditors not to file proofs of claim unless they received a notice advising them to do so. Such a notice has not been issued.

**4.** In the complaint the Debtor alleged that she attended college for approximately eight years attending both Texas Lutheran College, from fall 1988 to the fall of 1996, and also Austin Community College from fall 1990 to the spring of 1992.

unconstitutional and cannot be relied upon as a means of abrogating its sovereign immunity and requiring it to defend the instant suit.[5]

In her response to the motion, filed on September 3, 1999, the Debtor argued that the cases and authorities cited by the Coordinating Board in its motion, and this Court's decision in *In re Neary*, 220 B.R. 864, in particular, are not applicable here as the instant case concerns the dischargeability of a student loan debt. *Neary*, the Debtor argued, involved a determination of the dischargeability of taxes owed to the Commonwealth of Pennsylvania. The Debtor also argued that to dismiss the case summarily would be to defeat the rehabilitative purposes Congress sought to achieve by making certain student loan debts dischargeable under Code § 523(a)(8).

At the hearing the Debtor also called into question the Coordinating Board's status as a state agency thereby challenging its authority to assert Eleventh Amendment sovereign immunity as a ground for dismissal of the complaint. Drawing a comparison to this Court's recent decision in *In re Vinci*, 232 B.R. 644 (Bankr. E.D.Pa.1999), in which both the Pennsylvania Higher Education Assistance Agency and the Texas Guaranteed Student Loan Corporation were parties, but where sovereign immunity was not discussed and the

Code § 523(a)(8) issue was decided on the merits, the Debtor argues that the instant action is not a suit against a state, or state agency, and may therefore proceed. In making this argument the Debtor admitted, however, that she assumed, without any analysis, that the Pennsylvania Higher Education Assistance Agency is analogous to the Coordinating Board and that neither are state agencies. Next, the Debtor argued that the Third Circuit's *Sacred Heart* decision (holding that Code § 106(a) is unconstitutional), and this Court's *Neary* decision (following *Sacred Heart*), are distinguishable from the instant case because neither of these cases involved a request for a hardship discharge of student loans under Code § 523(a)(8). Furthermore, the Debtor posits that because Congress has not taken action to invalidate Code § 523(a)(8) in the wake of *Sacred Heart*, Code § 523(a)(8) still stands as a valid exercise of Congressional power governing the dischargeability of student loan debts when certain criteria are met. The Debtor argues that the motion should be denied so as to provide her the opportunity of proving on the merits that the relevant criteria have been met in this case and that the loans at issue should be discharged.

In reply, the Coordinating Board argues that it is an arm of the state of Texas entitled to assert Eleventh Amendment immunity from suit in this Court under the analysis set forth by the United States

---

5. Code § 106 (Waiver of Sovereign Immunity) states, in pertinent part:

(a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:

(1) Sections . . ., 523, . . . of this title.

(2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.

(3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages. Such order or judgment for costs or fees under this title or the Federal

Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.

(4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States.

(5) Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law.

Supreme Court in *Regents of the University of California v. Doe,* 519 U.S. 425, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997). In this regard the Board argues, *inter alia,* that it is an agency created by the State of Texas for purposes of overseeing the State's higher education system and supervising and administering its student loan program. Countering the Debtor's argument that the cases it cited in its motion are inapplicable—ostensibly because they do not involve the precise issue of dischargeability of student loans under Code § 523(a)(8)—the Board argues that it is not the nature of the suit that is at issue for Eleventh Amendment purposes, but rather the status of the state as a party named in such suit. Continuing, the Board argued that since the *Ex parte Young* doctrine is not at issue here,[6] if the State of Texas is determined to be a party, then the legal principles discussed in the cited cases require the instant case to be dismissed unless it is found to have either waived the sovereign immunity defense or consented to be sued. The Board contends that because neither of these exceptions apply here the instant case must be dismissed. Further, the Board argues that neither the remedial purposes behind the hardship discharge provision, as recapitulated by the Debtor, nor the fact that the statute continues to be a part of the Bankruptcy Code, address the issue presently before the Court, to wit: whether the State of Texas can be compelled to appear and defend against the present action filed by the Debtor in this Court.

## DISCUSSION

One of the primary purposes of the Bankruptcy Code is to provide a means by which those struggling under the weight of oppressive indebtedness can "reorder their affairs, make peace with their creditors, and enjoy a 'new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.' " *Grogan v. Garner,* 498 U.S. 279, 286–87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (*quoting Local Loan v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934)). The bankruptcy discharge is the embodiment of this "fresh start" principle, and lies at the very heart of the Bankruptcy Code. *See* Code § 727(b) and § 524(a). These remedial aims, however, are not without limitation. One such limitation is that debts for educational loans are not generally dischargeable.[7] Code § 523(a)(8). This general rule, however, is itself subject to an exception for cases in which the denial of a discharge of the student loan debts would impose an "undue hardship" on the debtor and his or her dependents. Code § 523(a)(8) states as follows:

(a) A discharge under section 727 … of this title does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or

6. The *Ex parte Young* doctrine holds that suits against state officials in their individual capacities seeking prospective declaratory relief for ongoing violations of federal law are not barred by the Eleventh Amendment. *See Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 269, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997); *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

7. Responding to concerns about an escalation in the default rate of student loans, Congress in 1978 enacted Code § 523(a)(8) " 'to curb the abuses of the educational loan system by restricting the ability of a student to discharge an educational loan by filing bankruptcy shortly after graduation, and to safeguard the financial integrity of educational loan programs.' " *In re McFadyen,* 192 B.R. 328, 331 (Bankr.N.D.N.Y.1995) (*quoting In re Pilcher,* 149 B.R. 595, 598 (9th Cir. BAP 1993)) (*citing* 124 Cong.Reg. 1791–94 (1978)); *see also In re Pelkowski,* 990 F.2d 737, 742 (3d Cir.1993) (Code § 523(a)(8) resulted from concern about "the perceived rise in bankruptcy filings by students on the brink of lucrative careers."). Code § 523(a)(8) has been amended several time since its inception. In its present iteration, student loan debts are not dischargeable in bankruptcy absent a showing of "undue hardship" within meaning of that provision.

made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

■ Code § 523(a)(8) is not self-effectuating. Rather, it requires the debtor to bring an adversary proceeding to determine whether a student loan debt is dischargeable under that provision, *see In re Greenwood*, 237 B.R. 128, 130 (N.D.Tex. 1999); *In re Stout*, 231 B.R. 313, 315 (Bankr.W.D.Mo.1999), or to plead and prove dischargeability under this section as an affirmative defense in an action brought by the creditor in state court. *See In re Perkins*, 228 B.R. 431, 433 (Bankr. E.D.Mo.1998) (observing that both federal and state courts have concurrent jurisdiction to determine the dischargeability of a student loan debt under Code § 523(a)(8)); *see also In re Rosage*, 189 B.R. 73, 78 (Bankr.W.D.Pa.1995) (stating that the bankruptcy court and any appropriate non-bankruptcy forum have concurrent jurisdiction to decide dischargeability actions under, *inter alia*, Code § 523(a)(8)). In the present case, the Debtor brought the instant action to determine the dischargeability of the debt owed to the Coordinating Board by filing a complaint naming the Board as a defendant therein. The Chapter 7 Trustee was named a nominal defendant.

■ Asserting that its status is that of an agency of the State of Texas, the Coordinating Board filed the instant motion to dismiss the proceeding on the ground that it is immune from suit in this Court under the Eleventh Amendment to the United States Constitution. The Debtor challenges the Board's claim of sovereign immunity by arguing, *inter alia*, that the Board is not a state agency or instrumentality entitled to such protection.

The Eleventh Amendment states:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by the Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S.Const.amend.XI.

■ The Eleventh Amendment's reference to suits "against one of the United States" encompasses not only suits in which a State is a named defendant, but also certain actions brought against state agents and instrumentalities which may be described as "arms of the state." *Regents of the University of California v. Doe*, 519 U.S. at 429–30, 117 S.Ct. 900. The issue of whether the Coordinating Board may properly be considered an "arm of the state" is a question of federal law, *Christy v. Pennsylvania Turnpike Comm'n*, 54 F.3d 1140, 1144 (3d Cir.), *cert. denied*, 516 U.S. 932, 116 S.Ct. 340, 133 L.Ed.2d 238 (1995), that can be answered only by reference to the provisions of state law that define its character. *Regents of the University of California v. Doe*, 519 U.S. at 430 n. 5, 117 S.Ct. 900. The Coordinating Board, as the party claiming entitlement to the protections afforded by the Eleventh Amendment, bears the burden of proving its applicability in this case. *Christy v. Pennsylvania Turnpike Comm'n*, 54 F.3d at 1144.

■ The Third Circuit has determined that the relevant inquiry into the status of a state entity requires consideration of the following criteria:

(1) whether, in the event the plaintiff prevails, the payment of the judgment would come from the state (this includes: whether payment will come from the state's treasury, whether the agency has the money to satisfy the judgment, and whether the sovereign has immunized itself from responsibility for the agency's debts);

(2) the status of the agency under state law (this includes: how state law treats the agency generally, whether the agency is separately incorporated, whether the agency can sue or be sued in its own right, and whether it is immune from state taxation); and

(3) what degree of autonomy the agency enjoys.

*Fitchik v. New Jersey Transit Rail Operations, Inc.,* 873 F.2d 655, 659 (3d Cir.), *certiorari denied,* 493 U.S. 850, 110 S.Ct. 148, 107 L.Ed.2d 107 (1989); *Christy v. Pennsylvania Turnpike Comm.,* 54 F.3d at 1144–45 (*citing Fitchik*). The foregoing criteria were derived from factors previously enumerated by the Third Circuit in *Urbano v. Board of Managers of New Jersey State Prison,* 415 F.2d 247, 251 (3d Cir.1969), *certiorari denied,* 397 U.S. 948, 90 S.Ct. 967, 25 L.Ed.2d 128 (1970).[8] Unfortunately, neither of the parties addressed the foregoing criteria in either their written submittals to the Court nor at oral argument.[9] Because of the important jurisdictional issues involved, to wit,

whether the Court's jurisdiction may properly be exercised over the Coordinating Board in light of its objection, the Court will proceed to consider the matter based largely on its own research.

■■ While no single factor is determinative of whether a suit against a state agency is barred by the Eleventh Amendment, it is well established that the first of the above criteria—the question of whether a judgment would have to be paid out of the state treasury—is generally considered to carry the most weight. *Fitchik,* 873 F.2d at 659. The *Fitchik* court observed that this conclusion "is supported by the Supreme Court's identification of the amendment's central goal as the prevention of federal court judgments that must be paid out of the state's treasury." *Id.* at 659–60 (*citing Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)). This is not to say, however, that the protections afforded states by the Eleventh Amendment are limited solely to guarding the public fisc. Rather, the Amendment is equally applicable to suits

---

**8.** The factors enumerated in *Urbano* are as follows:

> (1) how local law defines the status and nature of the entity;
> (2) whether the payment of a judgment would deplete the public treasury;
> (3) whether the entity has the funds or power to satisfy the judgment;
> (4) whether the entity is performing a governmental or proprietary function;
> (5) whether the entity has been separately incorporated;
> (6) the degree of autonomy exercised by the entity over its own operations;
> (7) whether the entity has the power to sue and be sued, and to enter into contracts;
> (8) whether the entity's property is immune from state taxation; and
> (9) whether the sovereign has immunized itself from responsibility for the agency's operations.

873 F.2d at 659.

**9.** The Debtor's reliance on this Court's recent decision in *In re Vinci* in support of her contention that the Coordinating Board is not a state agency is misplaced for at least two reasons. First, in *Vinci,* no determination, implicit or otherwise, was made regarding the

Pennsylvania Higher Education Assistance Agency's (the "PHEAA") status as a state agency for sovereign immunity purposes. Thus, there is no basis for the comparison the Debtor would have the Court make between the Coordinating Board and the PHEAA. Second, and more fundamentally, the defense of sovereign immunity may be waived by the party entitled to claim its protection. A recent decision of the Court of Appeals for the Eighth Circuit illustrates this point. In *In re Rose,* 187 F.3d 926 (8th Cir.1999), the Eighth Circuit held, in a proceeding to determine the dischargeability of a student loan, that waiver of state sovereign immunity could be effectuated by the agency seeking collection of the student loan debt filing a proof of claim in the debtor's case. 187 F.3d at 929 (*citing Gardner v. New Jersey,* 329 U.S. 565, 574, 67 S.Ct. 467, 91 L.Ed. 504 (1947) (bankruptcy court could entertain a trustee's objections to a claim filed by the state despite its assertion of sovereign immunity); *Georgia Dep't of Revenue v. Burke (In re Burke),* 146 F.3d 1313, 1319–20 (11th Cir.1998) (applying *Gardner* to hold that state's filing of proofs of claim rendered it subject to liability for violation of automatic stay and enforcement of discharge injunction), *cert. denied,* ——  U.S. ——, 119 S.Ct. 2410, 144 L.Ed.2d 808 (1999)).

brought against the states for injunctive relief. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100–101, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The Debtor in the instant case is not seeking damages, but rather relief that is in the nature of an injunction. Code § 524(a)(2). Thus, if the debt is determined to be dischargeable under Code § 523(a)(8), the discharge injunction provided by Code § 524(a)(2) will operate to enjoin the Board from taking any subsequent action to collect the amount due on the outstanding student loan as a personal liability of the Debtor.

As previously noted, the parties did not address this point in their submittals or at oral argument. The Court's research has turned up only two cases within this Circuit which apply the above factors in a situation, similar to that present here, where injunctive as opposed to monetary relief is being sought. The first of these cases, *In re Kish,* 221 B.R. 118 (Bankr. D.N.J.1998), while acknowledging the applicability of the Eleventh Amendment to cases where injunctive relief is sought, holds that the relevant inquiry is not whether monetary damages are requested in such a case, but whether "the state would be responsible for a judgment for monetary damages if such judgment were requested and obtained against the entity in question." *Id.,* at 126. Thus, under *Kish,* the applicability of the Eleventh Amendment to state agencies focuses on a state's "financial responsibility," "legal liability for [the agency's] debts," and "responsibility for payment of judgments," regardless of whether a monetary judgement is actually sought. *Id. (citing Hess v. Port Authority Trans–Hudson Corp.,* 513 U.S. 30, 45–46, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994)). The other case, also from the District of New Jersey, *In re Raphael,* 238 B.R. 69 (D.N.J.1999) holds, essentially, that the funding question takes on a lesser significance when only equitable as opposed to monetary relief is sought. *Id.,* at

81. The *Raphael* court stated: "the first *Fitchik* factor, whether payment of the judgment would come from the State's treasury, will not be the focus of this Court's inquiry ... for the simple reason that the case at bar concerns a request for injunctive relief instead of a monetary judgment." *Id.*

While both *Kish* and *Raphael* offer divergent views as to the applicability of the first *Fitchik* factor in cases where injunctive relief is sought, this Court need not determine which approach is more appropriate because the result here would be the same under either test. First, under the *Raphael* approach, because the relief sought in the instant case is injunctive only, monies will not be required to flow out of the state's coffers in the event of a Debtor victory. The Court notes, however, that since the discharge injunction sought would prelude the state from taking action to collect any portion of the debt owed, state finances may be affected by the entry of such order, even if only minimally. *See In re Greenwood,* 237 B.R. at 132. Thus, under *Raphael,* while the first of the *Fitchik* factors takes on less significance in this case than would be the case if a monetary judgment against the Board were involved, *see In re Raphael,* 238 B.R. at 81, the Court finds, nonetheless, that because of the potential negative effect a judgement favorable to the Debtor would have on the state treasury, this factor weighs slightly in favor of Board. *Kish,* on the other hand, concerns purely hypothetical state responsibility for monetary judgments entered against an agency although only injunctive relief is sought. The Texas Civil Practice and Remedies Code provides for the appropriation of state funds for the payment of certain claims against qualifying state agencies. Tex.Civ.Prac. & Rem.Code § 109.001 – 109.006. The Coordinating Board satisfies the requirements to be considered a "Governmental Unit" for purposes of the foregoing sections.[10] Tex.Civ.Prac. & Rem.

---

**10.** Civil Practice and Remedies Code

§ 101.001 (Definitions) states, in pertinent

Code § 101.001(A) and (D). Thus, it would appear that the first of the *Fitchik* factors weighs in favor of the Board whether under the *Kish* or *Raphael* tests.

As to the second *Fitchik* factor, the Court observes that the Coordinating Board owes its existence to the authority granted it by the Texas State Legislature in the Higher Education Coordinating Act of 1965, codified as Chapter 61 of the Texas Education Code. The Act states, in pertinent part:

> (a) The purpose of this chapter is to establish in the field of public higher education in the State of Texas an agency to provide leadership and coordination for the Texas higher education system, institutions, and governing boards, to the end that the State of Texas may achieve excellence for college education of its youth through the efficient and effective utilization and concentration of all available resources and the elimination of costly duplication in program offerings, faculties, and physical plants.

> (b) In the exercise of its leadership role, the Texas Higher Education Coordinating Board established by this chapter shall be an advocate for the provision of adequate resources and sufficient authority to institutions of higher education so that such institutions may realize, within their prescribed role and scope, their full potential to the benefit of the students who attend such institutions and to the benefit of the citizens of the state in terms of the realization of the benefits of an educated populace. Tex.Educ.Code § 61.002 (Purpose) (West 1999).

The Board is comprised of eighteen members, all of whom are selected by the Governor with the advice and consent of the Texas legislature. Tex.Educ.Code § 61.002. The Board is "the highest authority in the state in matters of public higher education and is charged with the duty to take an active part in promoting quality education in the various regions of the state." *Id.*, at § 61.051 (Coordination of Institutions of Public Higher Education). The Board also supervises and administers the student loan programs authorized by Chapter 52 of the Texas Education Code pursuant to Article III, §§ 50b, 50b–1, 50b–2, 50b–3, and 50b–4 of the Texas Constitution. Tex.Educ.Code § 52.01.[11] To this end the Coordinating Board also has authority to issue general obligation bonds of the State of Texas to finance educational loan programs within the State. *See* Tex. Const., Art. 3, §§ 50–b, 50b–1, 50b–3, 50b–4, *see also* Tex.Educ. Code §§ 52.66, 52.67. In addition to student loan funding obtained by such public bond offerings, the Board also receives appropriations from the State to fund authorized higher education programs. *See* Tex.Educ.Code § 61.059 (Appropriations). Unlike the Texas Guaranteed Student Loan Corporation, the Coordinating Board is not a corporation, but rather a state agency. *See* Tex.Educ.Code § 57.11 (stat-

---

part:
> In this chapter:
> (3) "Governmental unit" means:
> (A) this state and all the several agencies of government that collectively constitute the government of this state, including other agencies bearing different designations, and all departments, bureaus, boards, commissions, offices, agencies, councils, and courts;
> .***
> (D) any other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution.

11. Tex.Educ.Code § 52.01 (Administration) states:

> The Texas Higher Education Coordinating Board, or its successors, shall administer the student loan program authorized by this chapter pursuant to Article III, Sections 50b, 50b–1, 50b–2, 50b–3, and 50b–4, of the Texas Constitution. Personnel and other expenses required to properly administer this chapter shall be funded by:
> (1) the general appropriations acts; or
> (2) any other source of revenue received by the board in connection with the operation of the student loan program.

ing that the Texas Guaranteed Student Loan Corporation is a "public nonprofit corporation...."). It also appears that while the Board can sue and be sued in its own name, *see* Tex.Educ.Code § 57.47 ("If a student borrower defaults on a loan ... the [Coordinating Board] shall bring suit against the defaulting party in accordance with the requirements of the Higher Education Act of 1965, 20 U.S.C. Sec. 1001 et seq."), as noted above, *supra*, a judgement entered against the Board would be payable, either in whole or in part, by funds appropriated by the state for this purpose. *See* Tex.Civ.Prac. & Rem.Code § 109.001 – 109.006. Despite having some semblances of separateness from the State, *e.g.*, the ability to sue and be sued, raise money, and enter into contracts,[12] it is nonetheless clear that the Coordinating Board was created for the purpose of administering and implementing the State's higher education programs and policies and that such faculties merely foster the Board's ability to fulfill this role. The second *Fitchik* factor, therefore, also weighs in favor of the Board.

As to the last of the *Fitchik* factors the Court observes that while it appears that the Board enjoys a high degree of autonomy in the performance of its duties, its actions in general are circumscribed by the state education policies it must implement. In this regard, the Court notes that pursuant to statute, the Board is constrained to "perform only the functions which are enumerated in this chapter (Texas Education Code, Chapter 61 (Texas Higher Education Coordinating Board)) and which the legislature may assign to it." Tex.Educ. Code § 61.021. Accordingly, upon consideration of the criteria prescribed by the Third Circuit in *Fitchik*, the Court determines that the Coordinating Board is a state agency for purposes of the instant proceeding. *Accord In re Greenwood*, 237 B.R. at 130. In light of this determination

the Court concludes that the Eleventh Amendment is applicable to the present case.

The Eleventh Amendment has been construed by the Supreme Court to enact a sovereign immunity from suit, rather than a nonwaivable limitation on a federal court's subject matter jurisdiction. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. at 267, 117 S.Ct. 2028. Sovereign immunity is a judicially created doctrine which generally precludes the bringing of a suit against the government without its consent. Black's Law Dictionary, 1396 (6th ed.1990). The doctrine is founded on the ancient principle that "the King can do no wrong," and generally bars holding the government or one of its political subdivisions liable for the torts or illegal actions of its officers or agents unless such immunity is expressly waived by statute or by necessary inference from legislative enactment. *Id.* (citation omitted).

Three possible exceptions to the constitutional bar provided by the Eleventh Amendment have been recognized by the Supreme Court. *See generally, Darne v. State of Wisconsin, Department of Revenue*, 137 F.3d 484, 488 (7th Cir.), *certiorari denied*, —— U.S. ——, 119 S.Ct. 415, 142 L.Ed.2d 337 (1998). First, suits against state officials in their individual capacities seeking prospective declaratory relief for ongoing violations of federal law are not barred by the Eleventh Amendment under what is known as the *Ex parte Young* doctrine. *Id., see also Coeur d'Alene Tribe of Idaho*, 521 U.S. at 269, 117 S.Ct. 2028; *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714. Second, individuals may sue a state directly if Congress has abrogated the state's immunity from suit in unequivocal terms pursuant to a valid exercise of its power. *Seminole Tribe of Florida*, 517 U.S. 44, 55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). Finally, a state

---

**12.** Tex.Educ.Code § 61.067 (Contracts) states, in pertinent part, that: "[i]n achieving its goals outlined in this chapter and in performing the functions assigned to it, the [Coordi-

nating Board] may contract with any other state governmental agency as authorized by law, with any agency of the United States, and with corporations and individuals."

may waive its sovereign immunity and consent to be sued in federal court. *Id.,* at 54–55, 116 S.Ct. 1114; *Darne,* 137 F.3d at 488.

None of the foregoing exceptions are applicable in this case. First, the *Ex parte Young* doctrine is not applicable here because the Debtor did not name an appropriate state official as a defendant in the complaint. Next, the Coordinating Board clearly has neither waived sovereign immunity nor consented to be sued in this Court. Finally, as this Court discussed in *Neary,* the Third Circuit in *Sacred Heart* held that Code § 106(a)'s abrogation of sovereign immunity as applied to the states is unconstitutional. Thus, none of the exceptions this Court recognized in *Neary* are applicable in the instant proceeding.

■ The Debtor argues that both *Sacred Heart* and *Neary* are inapplicable here because neither of these decisions involved a debtor's request for a hardship discharge under Code § 523(a)(8). While it is true that neither *Sacred Heart* nor *Neary* concerned determinations of dis-

chargeability under Code § 523(a)(8), this argument, however, points up what amounts to little more than a distinction without a difference. The Court observes that in *Sacred Heart* the Third Circuit stated in unequivocal terms that Code § 106(a), which purports to abrogate state sovereign immunity with respect to numerous sections of the Bankruptcy Code, Code § 523(a)(8) included, violates the Eleventh Amendment and is unconstitutional.[13] *Accord, Matter of Estate of Fernandez,* 123 F.3d 241 (5th Cir.1997); *Schlossberg v. Maryland (In re Creative Goldsmiths of Washington D.C., Inc.),* 119 F.3d 1140, 1145 (4th Cir.1997), *certiorari denied sub nom., Schlossberg v. Maryland Comptroller of Treasury,* 523 U.S. 1075, 118 S.Ct. 1517, 140 L.Ed.2d 670 (1998). Given the Third Circuit's clear statement of the law with respect to Code § 106(a), the Debtor's argument that such holding should not be read so as to preclude its action against the Board is unsustainable. The Debtor's argument that Code § 523(a)(8) continues in effect as a valid provision of the Bankruptcy Code while true, misapprehends the

---

**13.** The Court is aware of recent decisions from other courts outside of the Third Circuit that reach a contrary result. In particular the Court takes notice of *In re Robertson,* 237 B.R. 124 (Bankr.W.D.Va.1999). In that case the bankruptcy court refused to grant defendant University of Virginia's motion to dismiss (pressing arguments similar to those heard by this Court in the instant matter) a *pro se* debtor's adversary proceeding to determine the dischargeabilty of his student loan debt under Code § 523(a)(8). Relying on a recent Fourth Circuit Court of Appeals decision, *In re Collins,* 173 F.3d 924 (4th Cir. 1999), the court held that "when discharge is at issue, the jurisdictional power of the bankruptcy court derives from control over the debtor and federal supremacy with respect to bankruptcy trumps any Eleventh Amendment claim of immunity by the state." 237 B.R. at 127. While this approach is insightful, it has not been recognized by the Third Circuit Court of Appeals. Rather *Sacred Heart* is complete on its face in holding that there is no abrogation of sovereign immunity in bankruptcy court.

Another recent decision to garner this Court's attention is *In re Greenwood,* 237 B.R.

at 128. The Court finds this case noteworthy in that it is the only reported decision in which the Coordinating Board is named as a defendant in a Code § 523(a)(8) proceeding. In that case the Board filed a motion to dismiss the proceeding against it raising virtually the same arguments asserted here. The district court in *Greenwood* reversed a decision of the bankruptcy court which held, *inter alia,* that a determination of the dischargeability of a debt does not constitute a suit against the state. The district court, noting the bankruptcy court's reliance on *Texas v. Walker,* 142 F.3d 813 (5th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 865, 142 L.Ed.2d 768 (1999), found that *Walker* dealt only with cases in which the State does not participate in any fashion. The district court, after determining that the Board is a state agency, 237 B.R. at 130, went on to hold that "it is clear that a[sic] adversary proceeding brought in federal court against a state agency to determine the dischargeability of student loans is in actuality a suit against the state. That being the case, the adversary proceeding brought by Greenwood against the Board is barred by the Eleventh Amendment." 237 B.R. at 132.

issue at bar. States are different than other creditors under the Bankruptcy Code in the sense that they may assert sovereign immunity and avoid being required to answer a suit filed in the bankruptcy court absent their consent. The Coordinating Board has withheld its consent thus necessitating the dismissal of the instant complaint. Moreover, the Debtor's argument based on the fresh start policy of the Bankruptcy Code misses the mark. Facilitating a fresh start for the debtor is only one of many policies underlying the bankruptcy Code. " 'While it is true that section 523(a)(8) runs counter to the general 'fresh start' philosophy of the Bankruptcy Code, the same could be said of any exception to discharge. The exceptions to discharge exist because Congress felt that other public policies outweighed the debtor's need for a fresh start.' " *In re Norris,* 239 B.R. 247, 253–54 (M.D.Ala.1999) (*quoting Matter of Barth,* 86 B.R. 146, 149 (Bankr.W.D.Wis.1988)). For all of the foregoing reasons, the complaint against the Coordinating Board is dismissed. The complaint is also dismissed as to the Chapter 7 trustee, a nominal defendant in the instant proceeding. As discussed *supra,* the provisions of Code § 523(a)(8) might still, however, come into play in litigation in state court.

■ Given the still developing nature of the law on this issue, dismissal in this case is without prejudice so as to afford the Debtor an opportunity to file an amended complaint which invokes the *Young* doctrine if, of course, the Debtor is able to sufficiently plead such a claim, and elects to do so.[14] *Accord, In re Schmitt,* 220 B.R. 68 (Bankr.W.D.Mo.1998) (dismissing complaint against Missouri Western State College on 11th Amendment grounds but noting that the debtor might nonetheless be able to obtain a determination of dischargeability in the bankruptcy court by refiling the action naming as a defendant therein a state official charged with enforc-

ing the student loan debt under the *Ex parte Young* doctrine.); *In re Morrell,* 218 B.R. 87, 92 (Bankr.C.D.Cal.1997) (granting debtors leave to amend their Code § 523(a)(1) complaint to determine the dischargeability of state franchise taxes to name an appropriate state official in an action invoking the *Young* doctrine); *Matter of Guiding Light Corp.,* 213 B.R. 489 (Bankr.E.D.La.1997) (denying motion by Secretary of Louisiana Department of Health and Hospitals to dismiss complaint for turnover of medicaid payments that were withheld from the debtor, and holding that the *Young* exception allowed the debtor to maintain such a proceeding against the Secretary for prospective injunctive relief).

An Order consistent with the foregoing findings of facts and conclusions of law shall be entered concurrently herewith.

---

**14.** The Court pauses to note, however, that in so ruling it does not offer any opinion as to

the relative merits of such a claim should the Debtor's elect to file an amended complaint.